## Hall Commission Company v. Robert L. Crook et al.

1. **Attachment.** *Plea. Nil debit.*

   *Nil debit* is not a good plea in abatement to an attachment, but, in proper cases, is a valid plea in bar.

2. **Same.** *Cause of action. Time of accrual.*

   If a nonresident, in the alleged performance of a contract of sale, deliver grain inferior to that contracted for, the purchaser's demand for damages becomes due upon receipt of the grain and the payment of the purchase money, and he may sue out an attachment therefor at any time thereafter.

3. **Same.** *Unliquidated damages. Contract.*

   An attachment will lie for unliquidated damages arising from the breach of a contract.

4. **Sales.** *Breach of contract. Obtaining property without paying price.*

   Where the seller of merchandise sent bills of lading therefor with draft attached to a bank, which delivered the bills of lading to the buyer, upon acceptance of the drafts, without payment, the bank became liable to the seller; but the seller was not entitled to avoid the contract on the idea that the buyer had been guilty of a breach of it.

5. **Same.** *Remedies of buyer.*

   Where a seller of merchandise delivers goods of inferior quality to that required by the contract, the buyer may:

   (*a*) Reject the goods and sue for damages; or

   (*b*) Pay the contract price, take the goods, and recover the difference between their value and the value of the goods required by the contract.

6. **Special Judges.** *Tenure of office.*

   A special judge, appointed to hear and determine a particular case, continues in office so long as judicial functions are to be performed in that case; but if appointed to act during the temporary disability of a regular judge, he goes out of office upon the return of the regular judge to duty; and cannot thereafter hear and determine a suggestion of error or like application in a case decided by him before the return of the regular judge to duty. (See opinion on motion, *infra* p. 454.)

FROM the circuit court of Warren county.

HON. OLIVER W. CATCHINGS, Judge.

Crook and another, the appellees, partners under the firm name of R. L. Crook & Company, were the plaintiffs in the court below; the Hall Commission Company, the appellant, was defendant there. From a judgment in plaintiffs' favor the defendant appealed to the supreme court.

This was an attachment suit by R. L. Crook & Co. against the Hall Commission Company. Plaintiffs were grain dealers in Vicksburg, and the Hall Commission Company were grain dealers in St. Louis, Mo. Plaintiffs ordered from defendant three car loads of oats to be delivered f. o. b. at Vicksburg. The order was accepted, and three car loads of oats shipped to plaintiffs, and drafts for the purchase price, with bills of lading attached, sent for collection to a bank at Vicksburg. When the drafts were presented to plaintiffs by the bank they were accepted, but not paid, and the bills of lading were delivered to plaintiffs, who presented them to the railroad company and obtained possession of the cars containing the oats. Upon inspection of the first two cars, plaintiffs found that the quality of the oats received was inferior to that ordered. They telegraphed defendant to this effect, and offered to take the two cars at one hundred dollars a car less than the contract price, which offer was accepted by the defendant, who wrote plaintiffs that, as soon as the bank advised them that the drafts had been paid, a check for the difference would be sent plaintiffs. The drafts were paid, but upon examination of the third car the oats contained in it were also found to be of inferior quality. The defendant declined to pay the difference, on the ground that the plaintiffs, in obtaining the bills of lading before paying the drafts, had changed the contract so as to make it a purchase on inspection instead of one upon an implied warranty. Plaintiffs then attached.

On the trial in the circuit court the defendant filed a plea in abatement, alleging that "at the time of the filing of the affidavit

for attachment herein the firm of R. L. Crook & Co. was not a creditor of the defendant, and the said defendant was not at that time indebted in any sum to the plaintiffs." To this plea the plaintiffs demurred on the ground that "the issue of indebtedness cannot be set up in a plea in abatement;" that it "is a separate and distinct issue from that of the rightfulness of the attachment, and cannot be embraced within the same." This demurrer was sustained. A second plea in abatement was filed, traversing all the grounds of attachment, except nonresidence, and denying that the debt was due.

The court gave a peremptory instruction to find for the plaintiffs in the sum of two hundred dollars for the first two cars, being the agreed difference at the rate of eight cents a bushel on one thousand two hundred and fifty bushels contained in each car. The court gave another instruction for the plaintiffs, to the effect that, if the jury believed from the evidence that the oats shipped in the third car were inferior in quality to those ordered, then they would find for the plaintiffs in such sum as they found the difference to be. Every instruction asked by defendant was refused, except one, which instructed the jury that the defendant was not bound as to the oats contained in the third car by the agreement made as to the other two cars, and that, if they believed the oats contained in the third car were worth the purchase price contracted for, they would find for the defendant as to that car and allow no reclamation thereon.

*McLaurin, Armistead & Brien,* for appellant.

The court erred in sustaining plaintiffs' demurrer to defendant's first plea in abatement. The first ground of attachment— the essential relation between the attaching party and the party to be attached—is the necessity of a debt from the party to be attached, or a rightful demand existing in the party attaching against the party attached. Code 1892, § 129. The second essential is for at least one of the eleven grounds mentioned in said section of the code to exist.

In order to sustain an attachment against a debtor on the ground of nonresidence, the debt must be due.    A plea in abatement is sufficient if it set up that the debt sued upon is not due. *Stadler* v. *Jacobs,* 70 Miss., 429 (s.c., 12 South. Rep., 444).

An affidavit traversing the truth of the indebtedness should be, and is, as admissible as it would be to deny under oath that the debt was due.

Code 1892, § 165, says: "The defendant in attachment may file a plea in abatement, verified by affidavit, traversing the truth of the alleged grounds upon which the attachment was sued out," etc.

The issue on the plea would be whether or not the attachment was rightfully sued out.    *Cock* v. *Kuykendall,* 41 Miss., 65.

As against a nonresident, it is essential that the attaching creditor must have a past-due debt.

Crook had no right to any reclamation, and if the oats were not what he originally ordered, and if he paid more for them than they were worth, it was his own fault.    The original sale was on a warranty as to grade, and the only right in the world Crook had was to pay the draft after notification of the arrival of the goods, detach the bill of lading, surrender it to the railroad, and then take the oats; then, if not up to grade, he could hold Hall for the damage.    See the bills of exchange.    No time for payment is mentioned in them.    They were in character similar to checks payable on demand.    *Parker* v. *Reddick,* 56 Miss., 242; *Converse* v. *Johnson,* 146 Mass., 20.

Crook had no right to the bills of lading until the drafts attached had been accepted and paid.    The bank holding the bills of lading and drafts had no right to surrender the bills of lading on a mere acceptance, and this act of the bank did not divest ownership in the oats.    *Stollenserck* v. *Thatcher,* 115 Mass., 124; *Downs* v. *National Bank of Milwaukee,* 91 U. S., 618; *New Haven, etc., Company's cases,* 57 Conn., 379 (5 L. R. A., 305); *Oxford Lake Line* v. *First National Bank,* 24

South. Rep., 482 (Fla.); *Bank* v. *Cummings,* 89 Tenn., 617; *Heiskel* v. *Farmers', etc., Bank,* 89 Pa., 155 (33 Am. St. Rep., 745).

*Bryson & Dabney,* for appellees.

The defendant cannot go into the merits of the indebtedness in the trial of the attachment issue. What can be the reason for having a trial on the merits if the merits must be gone into on the attachment issue? To keep these two issues apart, the statute provides that the attachment issue shall be tried first; and, that being sustained, the question of indebtedness shall then be tried.

If the debt was due, there was no error in the action of the court in granting a peremptory instruction for the plaintiffs on the attachment issue. This is a question of fact arising solely from the evidence adduced at the trial.

From the very moment that the defendant on this contract delivered oats inferior in quality to what it had agreed to deliver the indebtedness arose and necessarily became due at once. No amount of parleying between the parties could change this state of facts.

Admit, for the sake of argument, that Crook's action in getting possession of the car before paying the draft was wrong, it clearly could not have the legal effect of changing the terms of the original contract. It may have enabled Crook to discover Hall's fraud, in shipping inferior oats, at an earlier date than he would otherwise have discovered it, but that is the most that can be said. The only material fraud in this transaction was fraud in the defendant in shipping inferior stuff.

The core of the whole contention was whether or not the oats were of the kind and quality contracted for. If they were not, then the defendant was liable, and the question of whether or not the cars had been paid for could have no legal effect whatever.

Two courses were open to the plaintiff on receipt of the oats: One was to reject them outright, as failing to fulfill the contract,

and bring action for the breach of contract; and the other was to accept them and bring action for the difference in value between the goods purchased and the goods delivered, and it was this course that the plaintiffs took.

In *Stilwell Co.* v. *Biloxi,* 78 Miss., 786 (s.c., 29 South. Rep., 513), the purchaser refused to pay for the machine purchased, and forced the seller to bring suit for the purchase money. This court decided in that case that the purchaser, having kept and used the machine, could not defend absolutely, but must pay what was a reasonable and just price for the machine, and that he had the right to recoup the difference in value between the machine purchased and that delivered. The principle that we now contend for is absolutely sustained in that case.

HARPER, Special J.,* delivered the opinion of the court.

The demurrer to defendant's first plea in abatement was properly sustained. That plea sought by way of plea in abatement to deny that defendant was indebted to plaintiffs. This is not permissible. The debt can only be denied by a plea in bar. It is true that if there be no debt the attachment has been wrongfully sued out. But the trial of this question is reserved under our practice for the trial on the merits, since it ends the whole proceeding; otherwise, there might be two trials of this one issue in the same cause, and each might result differently.

The second plea in abatement denied, among other things, that plaintiffs' demand was due. This question was properly left to the jury, since an attachment cannot be sued out against a non-resident unless the debt be due. After the facts had all been shown, the court properly directed the jury to find for plaintiffs on this issue.

Plaintiffs' demand became due immediately after defendant had breached its contract by delivering grain inferior in quality

---

* Chief Justice WHITFIELD, having been temporarily incapacitated by illness, retired for a few days from the bench; and WILLIAM R. HARPER, ESQ., a member of the supreme court bar, was commissioned to preside in the supreme court in the place of the chief justice and during the period of his disability. While so acting in the place of the chief justice, Special Judge HARPER delivered the opinion of the court in this case.

to that agreed upon—at least, after the delivery of the grain and the actual payment of the price to defendant's agent, the bank. It is true plaintiffs' demand was partially unliquidated, but this court has held that an attachment will lie for an unliquidated demand arising out of a contract, as well as for a liquidated demand. *Nethery* v. *Belden,* 66 Miss., 490 (6 South. Rep., 464).

On the trial on the merits, the court below instructed the jury to find for the plaintiffs in the sum of two hundred dollars, on account of damages arising from delivery of the first two cars of inferior grain. This was correct, since the damages thereon became liquidated, fixed, and certain when defendant agreed that plaintiffs could take these two rejected cars for two hundred dollars less than the contract price, on account of the inferior quality of the grain. Nor have we been able to discover anything in the record to show that this agreement was brought about by any misrepresentation of any sort made by plaintiffs. Counsel for appellant contend that defendant was misled into believing that the money had been actually paid at the time this agreement was entered into. But certainly plaintiffs never did or said anything to that effect. On the contrary, defendant expressly stated that it would not remit until it had been notified that the drafts had been actually paid, showing that it knew or believed at the time that the drafts had not already been paid. But if the grain was delivered by the bank upon a mere acceptance of the demand drafts, it was the fault of the defendant's agent, who thereby became liable to it for the money, and did not authorize defendant to avoid its contract. Before the attachment was issued, all the money had actually been paid, and the demand, so far as the first two cars are concerned, was both due and liquidated.

As to the third car of grain, plaintiffs had two courses open to them: They could have rejected the grain and sued for damages for breach of the contract, or they could have paid the contract

price, taken the grain, and recovered the difference between its value and the value of grain of the quality named in the contract. Plaintiffs elected to pursue the latter course, and the right of action accrued upon the payment of the draft and the receipt of the inferior grain.     The court rightly left the question of the amount recoverable on account of this third car to be determined by the jury upon the evidence adduced.

*The action of the court below seems to have been correct throughout, and the judgment is affirmed.*

The appellant, after the delivery of the foregoing opinion, filed an elaborate suggestion of error.     Before the suggestion was acted upon, however, Chief Justice WHITFIELD, being restored to health, resumed his place on the bench.

Thereafter the suggestion of error was overruled, Special Judge HARPER, and not Chief Justice WHITFIELD, acting with the other judges in its consideration and determination.

Whereupon the appellant made a motion in the following words—viz. :

## MOTION.

Now comes the appellant herein and shows to the court that the opinion of the supreme court herein was delivered by Special Judge HARPER on February 5, 1906 ;

That in due course of time thereafter—to wit, on March 26, 1906—appellant filed a suggestion of error which is now pending before this court;

That at the time of the delivery of the opinion herein the said Special Judge HARPER was acting under the authority of the commission issued to him by the governor on January 29, 1906, as provided and authorized by Code 1892, § 921, which authorized the said Special Judge HARPER to preside generally during the disability of Chief Justice A. H. WHITFIELD, and the com-

mission did not authorize the said Special Judge HARPER to preside in any designated case, particularly this case;

That, as provided by said section, it had previously been certified to the governor that Chief Justice WHITFIELD was ill and unable to discharge the duties of his office; that since the delivery of said opinion the said chief justice has so recuperated and recovered his health as to be again upon the bench.

Appellant is informed and believes, and therefore charges, that, regardless of the fact that Special Judge HARPER was only commissioned to act as special judge generally during the disability of the chief justice, he yet considered it his right and his duty to take part, in his specially constituted (by the governor) judicial capacity, in rendering the opinion of the court responsive to the said suggestion of error.

For these reasons appellant asserts that it is its right to have the court, when no member thereof is unable, as regularly constituted, to pass upon and determine its rights.

Wherefore, appellant moves the court to displace the said special judge, that the said suggestion of error may be proceeded with regularly by the court as at present lawfully constituted.

*McLaurin, Armistead & Brien,* for the motion.

Judge HARPER was commissioned to preside on the supreme bench of Mississippi in the place of the Hon. A. H. WHITFIELD, chief justice, and to do and perform all things pertaining to all causes coming before said court for consideration.

The court will observe from this commission that there was no limit as to the time Judge HARPER was to preside, but his commission would, of course, expire when the disabilities of Chief Justice WHITFIELD had so disappeared as to enable him to resume his seat upon the bench.

There could not, under the law, as at present constituted, be four justices of the supreme court. When Chief Justice WHITFIELD returned to the bench, Judge HARPER's authority necessarily ceased. Judge HARPER was not commissioned to try any

particular case; if so, we admit that the rule of law would be different.    In this connection, we cite the court to sec. 165 of the constitution and to Code 1892, § 921.

*Bryson & Dabney, contra.*

WHITFIELD, C. J., delivered the opinion of the court upon the motion.

The facts in this case are these: The chief justice being temporarily sick, the governor appointed Hon. W. R. HARPER to act in his place, and during the period of his disability—that is to say, his sickness.    The commission issued to Judge HARPER authorized him "to preside in said supreme court in the place of the said chief justice, and to do and perform all things pertaining to all causes coming before said court for consideration as fully, in every respect, as the said chief justice could do if he were not disqualified and were present and presiding."    This is plainly not the appointment of a special judge to try a special case, but is a general appointment to preside. in all cases, but during the time limited—the disqualification of the chief justice.    The law seems clear that a special judge appointed to try a special case will take part in the decision of everything relating to that cause, suggestions of error, etc., included.    Work on Courts and Their Jurisdiction, p. 395.    That is not this case. Here, clearly, Judge HARPER's power to act as a special judge was limited to the period of the sickness of the chief justice. Immediately upon the termination of that disability—that is to say, when the chief justice resumed his duties—the power of the special judge at once terminated.

We have examined quite a number of authorities, but cite only two—the best and clearest we have found.    In the case of *Coles* v. *Thompson,* 7 Tex. Civ. App., 666, the facts were: The district county judge presiding in Bee county entered his disqualification, and the Hon. G. W. Fly was regularly agreed on as special judge, and qualified as such, and had, previous to the

trial term, made orders in causes—that is to say, Judge Fly was appointed for the term to try all causes. At the trial term succeeding the term at which he had made orders in various causes, the disqualified judge had been regularly succeeded in office by another judge, duly and regularly elected to the office, before whom the trial was held. The defendant objected to the regular judge trying the cause, insisting that the special judge should try, because his appointment was still in force. The court said: "We are of opinion that, on principle, the powers of a special judge terminate when the occasion for his existence has ceased. There can be no substantial reason why the district judge should not proceed to hear and determine any cause on the docket of his court where no cause exists disqualifying him from so doing."

In the case of *Hyllis* v. *State,* 45 Ark., 478, the facts were: A vacancy existed in the office of circuit judge, and a special judge was elected, and the Hon. J. E. Riddick was chosen special judge on the 18th of March, and acted as special judge until the 28th of March, when the Hon. W. H. Cate's commission as regular circuit judge was issued, and he appeared, qualified, and took the bench. On the 29th day of March the special judge, without any new election held, tried the cause, and the question was whether the judicial functions of the special judge did not cease and terminate upon the appearance of the incumbent of the office, and the court held that they did so cease and terminate, and that all the proceedings before the special judge were absolutely void.

The cases referred to in Work on Courts and Their Jurisdiction, p. 395, notes 1 and 2, are cases of special judges appointed to try special causes. We are, therefore, of the opinion, both on these authorities and on reason and principle, that the power of the special judge in this cause existed only during the sickness of the chief justice, and ended upon the resumption of the bench by the chief justice—that is to say, upon the expiration of the disability (sickness) of the chief justice.

Reargument is asked for in this cause.    It appears that the cause was submitted originally on briefs without oral argument. Oral arguments are never allowed on suggestions of error. If either of the two justices who took no part in this cause on the former hearing, after examining the record, shall desire oral argument, then the cause will be remanded to the docket for oral argument; otherwise, the suggestion of error will be passed on by the regular judges of the court in the usual way.    We add that the point was not called to the attention of the court until the suggestion of error had been acted on.

*The result is, that the judgment heretofore entered overruling the suggestion of error is hereby vacated, and this cause is hereby resubmitted, on suggestion of error, to the court for determination.    So ordered.*

*And after this, the suggestion of error was overruled by the court, consisting of the regular judges.*