Bowers *v.* Southern Automatic Music Co.

[74 South.   774, Division B.]

1. SALE. *Action. Breach of warranty. Recoupment. Question for jury.*

In a suit on the purchase money notes for a piano, where defendant filed a plea of recoupment and there was evidence that the piano did not meet the warranty given by the seller, the issue should have been submitted to the jury.

2. SALES. *Breach of warranty. Waiver of damages. Acceptance of goods.*

The acceptance of a piano bought under a warranty, but which did not meet the warranty, was not a waiver of the purchaser's claim for damages for such breach of warranty.

3. COMPROMISE AND SETTLEMENT. *Execution of agreement. Abortive attempt.*

Under the facts as set out in this case the court held that there was no binding compromise and settlement between the parties, but that the agreement of settlement was only tentative and never executed.

APPEAL from the circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Suit by the Southern Automatic Music Company against Houston D. Bowers. From a peremptory instruction for the plaintiff, defendant appeals.

This suit was begun by the appellee as plaintiff in the court below to recover upon twelve promissory notes, each being part of the purchase price of a Wurlitzer piano sold by appellee to appellant for use in a picture show. As part of the purchase price, appellant delivered to appellee an old piano owned by him at an agreed price of six hundred dollars and gave his twelve notes for seventy-five dollars each, payable monthly. The appellant declined to pay any of the notes, and suit was brought and a writ of seizure granted to enforce the lien for the unpaid purchase price. The defendant pleaded a breach of warranty on the part of plaintiff, alleging that the plaintiff had represented that the piano was new and that it was in good condition and would furnish the kind of music which plaintiff knew defendant desired, and that it could be so regulated that it would make soft music when desired, when as a matter of fact these warranties were untrue, and that defendant had tendered the piano back to the plaintiff and demanded of it that it make good its warranty. Defendant also pleaded damages by way of recoupment and issue was joined on both these pleas. Defendant also filed a plea of *puis darrein* continuance in which he avers that the parties had settled this suit by agreement, whereby plaintiff was to return to defendant at his place of business in Jackson, Miss., the old piano taken as part payment in as good condition as it was when delivered to plaintiff, and that one Freeland, the agent of the plaintiff, was to be the judge of the condition of the old piano, and that the defendant was to return to plaintiff the Wurlitzer piano and pay plaintiff one hundred dollars and the costs of this suit, but that the plaintiff had not returned the old piano to the de-

fendant in good condition, though the defendant stood ready at all times to carry out the terms of the compromise settlement which he pleaded in bar of this action. After all the testimony had been taken, there was a peremptory instruction for the plaintiff, and the defendant appeals.

*Powell & Featherstone,* for appellant.

We shall argue this case upon two theories. First; If the original contract for the sale of the piano was not abrogated by the second agreement, then that there was a breach of warranty by appellee, for which we were entitled to damages by way of recoupment; Second: If the last agreement, set up in our plea of *puis darrien* continuance, abrogated the first contract, that then appellee could not proceed upon the original contract but is confined to the last agreement.

On the first proposition we say that this court, by an unbroken line of decisions, has held that whenever there is a conflict in the evidence it is a question for the jury and a peremptory instruction should not be given. *National Life Insurance Company* v. *Devance,* 110 Miss. 196.

In the next place it will not be contradicted that when a peremptory instruction is given, like a demurrer to the evidence, it admits, not only all that the evidence of the opposite party proves, but all that such evidence tends to prove, the law applicable to the facts should be given the jury, leaving the jury to say whether the propositions of fact have been established. *Myrick* v. *Wells,* 52 Miss. 149; *American Express Company* v. *Jennings,* 86 Miss. 329, 38 So. 374, 108 Am. St. Rep. 708; *Bolling* v. *Red Snapper Sauce Company,* 97 Miss. 785, 53 So. 394; *Bass* v. *Ramos,* 58 Fla. 161, 50 So. 945. In the case of *Bass* v. *Ramos, supra,* the Florida court held, and correctly so: ''If the evidence even tends to prove the issue presented by the plaintiff, it should be sub-

mitted to the jury." Our court has held that if any in-
inference can be deduced from the action of the party,
which will slightly tend to prove the issue, this infer-
ence should be submitted to the jury. It may be a cir-
cumstance but a jury may find this circumstance to be
sufficient for them to decide the issue. If there is any
conflict in the evidence, or in the inferences which may
be drawn from the circumstances, the view which is most
favorable to the party against whom a peremptory in-
struction is given must be taken as true. *Carson* v.
*Leathers,* 57 Miss. 650; *Illinois Central Railroad Com-*
*pany* v. *Boehms,* 70 Miss. 11, 12 So. 23; *Whitney* v.
*Cook,* 53 Miss. 551; *Farmer* v. *Cumberland Tel. & Tel.*
*Co.,* 86 Miss. 55, 38 So. 775; *McCaygn* v. *Young,* 85
Miss. 277.

It will not be disputed, we think, by counsel on the
other side, that the law in this state on sales of this
kind is that where a vendor sells personal property, un-
der a warranty which fails, and the vendee has paid all
or a part of the purchase price on the reception of the
property, that in such case the vendee can do either of
two things: First, he can return the property to the
vendor and cancel the trade; or second, he can retain
the property purchased and recoup his damages for the
breach of warranty.

In this case we attempt to avail ourselves of both
these remedies. We tendered back the instrument and
when the vendor failed to make us whole, we retained
the instrument and now seek to recoup our damages for
the breach of warranty, when the vendor sues for the
purchase price, as shown by our plea for recoupment.

The evidence shows that the agent of appellee knew
that the instrument was intended for use in a theatori-
um when he sold it, and he guaranteed it to be a suita-
ble instrument for that purpose, and yet he practically
admits, upon the stand, that it was not suitable for this
purpose.

And so we again say that the evidence not only tends to show, but does show that appellee has breached his contract of warranty and we are entitled to recoup our damages against the demand of appellee for the purchase price, and this right being denied us by the peremptory· instruction, given by the court, we are entitled to a reversal.

We will now discuss the issue raised by our plea of *puis darrien* continuance, to wit: That after the commencement of the case the parties made a compromise settlement of the case by rescinding the original contract and making a new one, and that thus the appellee lost the right to proceed further with the original contract and was relegated to the compromise agreement. First, we say that there seems to be no practical difference between the parties as to the terms of the compromise agreement which was: that appellee was to return the old piano to the Majestic theatre in as good condition as it was in when it received it and Bowers was then to pay appellee one hundred dollars and the cost of suit, and appellee was to retain the money already paid it. If there is any dispute between the parties as to this agreement then we say that it is a disputed question of fact and was for the jury to decide and the court should not have granted a peremptory instruction.

Second, we say that this last agreement was not an accord and satisfaction, as contended for by our friends, the enemy, but was a compromise agreement, by which the original contract was rescinded and a new contract entered into and appellee's law in regard to accord and satisfaction has no application.

There is a difference between an accord and satisfaction and a compromise. An accord and satisfaction is the settlement of a claim; a compromise is a settlement, not of a valid claim but the settlement of a controversy. See 5 Ruling Case Law, uage 877. In the case at bar not

only the claim of appellee was settled, but the counter-claim of appellant, both of which constituted the controversy.

The law regards with favor, and seeks to uphold settlements of pending or threatened litigation but does not so regard an attempt to discharge an admitted debt by the payment of a part of it. See 5 Ruling. Case Law, page 891, and cases cited in note 100. The subject of compromise and settlement is in general governed by the fundamental principles applicable to all contracts. See 5 Ruling Case Law, page 876.

We contend that this compromise agreement, rescinding the old contract, was binding upon the parties because: First, it was about a matter in which a legal contract could be made; second, the parties making the contract were capable of contracting; .third, there was a legal consideration for the contract; and fourth, there was no fraud claimed in the making of the agreement. Why then is not the contract binding on the parties? Our court in the case of *Bass* v. *Nelms,* 56 Miss. 508, says:

"It is entirely competent and meritorious for a party who has been seeking redress in the courts from the consequence of the fraudulent practices of his adversary to enter into negotiations and come to a settlement with him. Although he might succeed, by prosecuting the litigation, in obtaining full relief, yet if he agrees to abandon litigation, and comes upon terms of adjusting the matters in controversy, if the contract is fairly made, he is bound by it. Nor will he be permitted to reopen the matters of former difference unless he can clearly and satisfactorily show that he was entrapped into the contract, by duress, or such fraudulent practices as will avoid it." Citing *Field* v. *Weir,* 28 Miss. 69; *Edwards* v. *Roberts,* 7 Smed. & M. 555; *Hanson* v. *Field,* 41 Miss. 712; see also, *Long* v. *Shackleford,* 25 Miss. 559; 3 Cyc., page 518 citing authorities from nearly all the states.

*Watkins & Watkins,* for appellant.

The appellant cites in support of its contention *Whitney* v. *Cook,* 53 Miss. 559. In that case, it was held that a peremptory instruction was improper; that the case should have been submitted to the jury to determine as to whether or not the new agreement was to be substituted in place of the old agreement.

"Such an instruction is proper only where all the facts in evidence being taken as absolutely true, every just inference from them fail to maintain the issue. In this case it was erroneous to so instruct the jury, because, however strange an arrangement it may have been for Cook to discharge Whitney from the notes for the chance of gaining from a share in his claim against the United States, and however much the retention of the notes by Cook, and other circumstances, may be calculated to create a doubt as to the real nature of the agreement between the contracting parties, the testimony presented such a case as made it proper to let the jury pass upon the disputed facts, without any declaration from the court as to the weight or sufficiency of evidence. The settled doctrine is that, if the promise or agreement itself, and not its performance, is accepted in satisfaction and extinction of the demand, it is good as an accord and satisfaction, without performance."

The difference between an accord and satisfaction and a compromise is the substitution of a new agreement for the old one. R. C. L. pg. 178, where the following language is used:

"While the distinction between accord and satisfaction and other methods of discharging liabilities is not always clear, yet it may be generally discovered by careful attention to the elements of the definition. Accordingly, accord and satisfaction is distinguished from novation in that novation is a mode of extinguishing one obligation by another; that is, the acceptance of a new prom-

ise in satisfaction of a previously existing claim while in
the case of an accord and satisfaction, it is not the new
compromise itself but the performance of the new com-
promise that is accepted as a satisfaction. It is distin-
guished from payment in that by payment generally un-
derstood a discharge by a compliance with the terms of
the obligation, or its equivalent, while in an accord and
satisfaction,  the discharge is effected by the performance
of terms other than those originally agreed on. Com-
promise is distinguished from accord and satisfaction
by the fact that it must be based on a disputed claim
while an accord and satisfaction may be based on an
undisputed or liquidated claim and also accord and sat-
isfaction does not include the adjustment of conflicting
claims to real estate, whereas, compromise may do so.
An accord and satisfaction may be between a debtor
and a single creditor, and in this respect it is distin-
guished from a composition with creditors, which is an
agreement between two or more creditors, and an em-
barrassed or insolvent debtor or on behalf of such debt-
or, whereby in consideration of the application of a cer-
tain sum of money or property toward the *pro rata* pay-
ment of their claims, they agreed to accept the amount ,
received in full satisfaction of their claims. The agree-
ment in such a case carries within itself the new con-
sideration requisite to an accord and satisfaction of liq-
uidated claims, namely, the relinquishment or possible
relinquishment by each creditor of a part of his claim
and requires that there be two or more creditors to the
agreement.'' The instrument in question was not only
warranted to be in good condition, suitable for the pur-
pose for which it was sold, to make good music, but was
warranted to be satisfactory to the purchaser, and it is
stated without dissent that wherever an article is war-
ranted to be satisfactory to the purchaser, he is not ob-
ligated to pay for the same, if, acting in good faith, the
same is found to be unsatisfactory; and as to whether

or not he is acting in good faith, is necessarily a question for the jury. 35 Cyc., page 219, where the law is stated as follows:

"Where the contract of sale is to furnish some chattel which shall be satisfactory to the buyer, and the object of the contract is to gratify taste or sensibilities, serve personal convenience, or satisfy individual preference, it is very generally held that the question whether the chattel furnished is satisfactory is for the sole determination of the buyer, and that the courts cannot inquire into the reasons for his determination in case he declares that he is not satisfied. So there are some decisions which apparently extend this doctrine to cases where the question is not one of taste but merely of operative fitness or mechanical utility. On the other hand there are decisions that hold that the buyer must show reasons for his dissatisfaction, and that the law will say that what in reason ought to satisfy a contracting party does satisfy him. The weight of authority, however, is against both of these views, the rule that has received its sanction being that if the buyer is honestly and in good faith dissatisfied, it is immaterial that he ought in fact to be satisfied and that his dissatisfaction is unreasonable; that the law will not make contracts for people *sui juris*. It is, however, very distinctly recognized in this line of decisions that the dissatisfaction must be real and in good faith, and not result from caprice or a dishonest design to be dissatisfied in any event. If the contract provides that the thing sold will 'operate in a satisfactory manner,' it will be construed to mean in a manner satisfactory to a reasonable person and not to the satisfaction of the purchaser however unreasonable he may be."

*Green & Green,* for appellee.

The evidence shows that the proposition, as recited in plaintiff's replication, was the agreement, and this was

114 Miss.—3

an agreement of "accord and satisfaction" on the terms proposed. It was a proposition for an accord and satisfaction.

The condition precedent of the accord and satisfaction was, that if the plaintiff would tender the defendant at his place of business, in Jackson, the piano, in the same condition it was, when it was received by plaintiff, then defendant would return the Wurlitzer, pay the one hundred dollars and the cost of suit.

But this proposition was upon the further condition that Freeland was to be the sole judge as to whether it was in the same condition, and Freeland decided that it was not in the same condition. Bowers went with Freeland to the depot where the piano was, before it was or could be carried to Bower's place of business, the place of tender, and Freeland then and there informed Bowers, that the instrument was not in the same condition and Bowers then said he would not accept it. Freeland decided it was not in the same condition as it was when it was delivered to plaintiff, and Freeland "then told him (Bowers) it was impossible to deliver the instrument or attempt to deliver it in the same condition it was when we shipped it away;" and then and there, at the depot, Bowers refused to accept it and concurred with Mr. Freeland that it was not in the same condition.

The proposition of accord and satisfaction never became operative or binding, first, because it was a proposition merely which was never performed by either the plaintiff or defendant; second, because it was a proposition to become effective upon a condition, namely that Freeland should decide that the piano was in as good condition; third, to be an "accord and satisfaction," the satisfaction must be given, and neither party has performed the accord, if any, by satisfaction, as proposed; fourth, performance by Priddy was prevented by subsequent cause with which he had no connection, namely, the injury to the instrument by the railroad; fifth, Bowers could not keep the instrument and use it

constantly, after the proposed compromise, and never re-deliver it or tender it to Priddy, and then claim that he had "satisfied the accord."

Counsel's brief proceeds upon the theory that there had been an accord which had been performed by one party, and performance refused by the other; that there was an absolute agreement by Mr. Priddy to return the old piano in as good condition as it was when he re-ceived it, and that he, Priddy, was bound under such a proposition to repair it and tender it; but the court be-low held that, as the proof incontestably shows, there was nothing said in the agreement as to repair, nor to require plaintiff to make repairs to place it in the same condition, and this would be the injection of a new element which could not be said to have been in the minds of the parties; and, besides, the court held that this objection comes too late. Priddy was never asked to repair the piano by Bowers and the court held that the defendant stood by, allowed the decision to be made without objection, and the decision having been made is final, and the power of the arbitrator ended. *Yazoo, etc., R. R. Co.* v. *Fulton,* 71 Miss. 385; *Whitney* v. *Cook,* 53 Miss. 551; *Barnes* v. *Loyd,* 1 How. (Miss.) 589; 1 Am. & Eng. Enc. of Law (2 Ed.), 408; *Pulliam* v. *Tay-lor,* 50 Miss. 527; 1 Am. & Eng. Enc. of Law (2 Ed.), 40; 1 Am. & Eng. Ency. of Law (2 Ed.), 422.

The proposed accord and satisfaction was a proposi-tion whereby it was to become effective as an agreement and capable of performance if Freeland decided that the piano was in the same condition it was when Priddy received it. Here an arbitrator or umpire was selected by the parties to decide the question as to whether the piano was in the condition it was to be, under the pro-posed accord and satisfaction, in order to bind Bowers, the other party, to an acceptance of the piano.

This selection of an umpire to determine the condi-tion precedent viz.; whether the piano was in the same condition or not, was binding upon the parties, and his

decision was final. *Georgia, etc., R. Co. v. Brooks,* 66 Miss. 594; *Construction Co. v. Granite Co.,* 90 Miss. 16, cited by appellant, fully sustains our position. An unaccepted offer does not bind. *G. & S. I. R. R. Co. v. Cast Iron Pipe Co.,* 72 So. (Miss.) 882; *New York Life Ins. Co. v. McIntosh,* 86 Miss. 236. When the umpire decided that the piano was not in as good condition as when received by Priddy, then there was no obligation upon Bowers to accept it.

As to the giving of the peremptory instruction for plaintiff on the other branch of the case. The evidence clearly shows, without dispute, that the instrument was sold to Mr. Bowers after he had examined it and heard it played; and that the agreement was that if it was not satisfactory, that he, Bowers, could exchange it for a more expensive instrument.

The evidence shows that, time and again Bowers was requested to come to Memphis to the main office of the plainiff and there select an instrument that would suit him, even to the paying of his expenses, and he never would go. He testified that he wished plaintiff to send a piano to his theatorium in Jackson, so that he could hear it played there, and that he was willing to pay the freight upon it; but he testified: Q. Was anything said in the original contract that they would deliver to you another piano set up in your theatorium for you then to select? A. Nothing was said like that.''

The evidence shows uncontradictedly that Bowers objected, in his testimony, to the instrument not being made to play as low in pitch as he desired, but nowhere, in his pleading, did he set up any such proposition; on the contrary, his pleading sets up that the said instrument could be regulated so as to make soft music suitable to picture shows, and the proof shows that these instruments are used in picture shows and suitable for picture shows; and Bowers had been using it continuously in his picture show, and the uncontradicted testimony in the case is, that it is the kind of instrument designed for

a picture show, and yet Bowers seeks to escape liability for the instrument, while continuing to use it and get the benefit of it on the proposition, that it did not play as low as he wished it, and hence, unsatisfactory; and yet while claiming it was unsatisfactory he, Bowers, could exchange it for another instrument and though requested by the plaintiff to go and select another instrument, he would not go and select another instrument, and continued to use this one in his picture show from April, 1914, to September, 1915, the time of the trial.

Such a defense on its face, is really unconscionable, and as shown in the record, counsel, in the court below, only stress the "accord and satisfaction" proposition; and the opinion of the court below for motion for peremptory is confined entirely to that proposition.

The measure of Bowers' right, if the piano was not satisfactory, was the right of exchange, and that right of exchange was that he could select another and this other being in Memphis, and not in Jackson, it was competent for him to execute his right of selection and go to Memphis and there select an instrument which was satisfactory to him. He could not, claiming that the instrument was unsatisfactory, keep it and use it and practically wear it out (for the life of these instruments is very short), and then claim that he should not be made to pay for it. The repairs on the rod were made and paid for by plaintiff. Wherefore, the judgment should be affirmed.

STEVENS, J., delivered the opinion of the court.

The issue presented by the plea of recoupment should have been submitted to the jury. There was evidence tending to prove that appellee warranted the Wurlitzer piano, purchased by appellant from the appellee, to be a first-class musical instrument; that it could be regulated to play either loud or soft music; that it would make music suitable for a theatorium or picture show; and .

that it would be satisfactory to Mr. Bowers as the proprietor and operator of such show. The testimony tended further to prove that the instrument was not a first-class piano; that it could not be regulated to play soft music; but, on the contrary, that appellee's agent had attempted to regulate it and had failed in the attempt; that, in the language of Mr. Bowers, it was a "groan box;" that it was not satisfactory to him as the operator of the moving picture show; and that the instrument did not come up to representations. The testimony was indefinite as to the difference in value of the instrument as it proved to be, and the piano that Mr. Bowers thought he was buying, or the one as represented; and the evidence was not altogether definite as to the exact amount of damage sustained by Mr. Bowers. There was, however, an affirmative plea interposed by the defendant, claiming damages for the breach of the warranty of the kind or quality of the article sold, and the proof justified a submission to the jury of the inquiry as to the exact amount of damages. The sufficiency of the plea of recoupment was not challenged. The acceptance of the new piano by Mr. Bowers, under all the circumstances, was not a waiver of his claim for damages for the breach of warranty. *Stillwell Co.* v. *Biloxi Co.*, 78 Miss. 779, 29 So. 513; *Commission Co.* v. *Crook*, 87 Miss. 445, 40 So. 20, 1006; *Mobile Auto Co.* v. *Sturges*, 107 Miss. 848, 66 So. 205. In the instant case there was an express warranty about the quality of music the instrument would make, and about its adaptability to the use and purpose for which it was purchased. Appellee was fully advised of Mr. Bowers' needs, the exact place the instrument was to be installed, and the purpose for which it was bought.

In our judgment, the effort to compromise proved abortive, and the proposition of settlement is no longer binding upon either party. The testimony shows that if appellee returned the old piano to Mr. Bowers, at his place of business, in as good condition as it was, the

latter would accept it back and pay one hundred dollars and the cost of court. There was no agreement that appellee was to repair the old instrument, and the question as to whether.it was, or was not, in as good condition, was a fact to be decided by Mr. Freeland, and by him alone. The party selected to pass judgment upon the condition of the old piano unhesitatingly certified that it was not in good condition, and his statement was accepted by Mr. Bowers without protest. The proposition of settlement seems not to have been entertained further. The agreement was tentative and never executed. The undertaking of appellee was not to return the old piano absolutely in as good condition as it was when Bowers parted with the possession, but to return it, provided only in the judgment of Mr. Freeland it was in as good condition as before.

The judgment of the learned circuit court' will be reversed, and the cause remanded.

*Reversed and remanded.*