SHARP v. BROOKHAVEN PRESSED BRICK CO.,

[83 South. 274, In Banc. No. 20897.]

SALES. *Implied warranty of quality not lost by acceptance.*

Where bricks were shipped to a purchaser by the manufacturer with draft and bill of lading attached and he had to pay the draft before receiving the bill of lading or the brick represented thereby, in such case the implied warranty of quality of the brick was not destroyed by the acceptance of the brick by the purchaser.

APPEAL from the circuit court of Lincoln county.

HON. D. M. MILLER, Judge.

Suit by J. P. Sharp, against the Brookhaven Pressed Brick and Manufacturing Company. From a judgment for the defendant, the plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Brady & Dean,* for appellant.

Appellee itself practically admits that the contentions presented by it are trash, by the statement on page 5 of its brief. The sole and only question, in the main, which is involved, and the item upon which the jurisdiction of the circuit court was invoked, is whether or not if there was an implied warranty of quality, this warranty would survive acceptance."

After making its argument upon this question, it then undertakes to sum it up in the enunciation quoted as ''VI'' on the first page hereof. It will not, therefore, be necessary for us to answer these propositions separately, since they are really one and the same.

At the very beginning of that part of its brief marked ''Brief,'' page 5 thereof, appellee seeks, by a sweep of wild words, to clear out of the record everything that

in any way hinders the progress of its proposed argument. The plan would be good if worth anything. Let us correct the eliminations so calmly stated. We say: The record in this case in effect does show a case of sale by sample; very positively does show a case of an article to be manufactured according to some specification; even shows a case of the fitness of the thing sold for the use to which it was to be put (although that is not an item of damage); and does show a case of warranty; it does not show a case of an article for resale, nor a case involving the question of latent defects not discoverable by inspection.

It is because of the confusion that has developed in its mind over the issues here that causes appellee to see apparent confusion in the decisions of the supreme court of Mississippi. All of our own decisions, and most of those from other jurisdictions, readily fall into readily distinguishable lines. Because our own decisions are so clear, we shall not again discuss the cases cited from other states.

The Mississippi rule is stated clearly in the case of *Hall Commission Company* v. *Crook*, 40 So. 20, applied in numerous other cases and clearly re-announced in *Register Company* v. *Hude*, 80 So. 378, as follows: . . Plaintiffs had two courses open to them; they could have rejected the grain and sued for damages for breach of the contract, or they could pay the contract price, take the grain and recover the difference between its value and the value of grain of the quality named in the contract. Plaintiffs elected to pursue the latter course, and the right of action accrued upon the payment of the draft and the receipt of the inferior grain."

The oats were ordered, by what specifications does not appear; the cars were sent with bills of lading attached; consignees accepted the drafts but were allowed to inspect two cars before payment; found the oats inferior and secured an adjustment; the third car on in-

spection was found to contain inferior oats, and plaintiff
was allowed to recover the difference.

Here, brick was ordered by certain specifications, the
cars were shipped with bills of lading attached, which
consignee Mr. Sharp, appellant, paid and on inspection
thereafter found inferior goods. He sues, and appellee
says he cannot recover because he accepted the brick.
So did plaintiff accept the oats. The court says one so
damaged can accept and sue, or reject and sue. Appellee
says one must either accept or reject.

In the cases of *Stillwell etc. Company* v. *Biloxi Cann-
ing Company*, 29 So. 553, and *Hoop Company* v. *Sear-
les*, 93 Miss, 1, the buyers undertook both to reject and
accept. The canning company rejected, then took the
property and used; it was forced to keep it, but was
allowed to recover on its warranty. Searles rejected
short weight, ties, thus ending his contract; he could
then have sued for breach of contract; after rejection,
however he proceeded to appropriate them; he was not
protected as was the canning company, and was allowed
no right of recover, having really sustained no damage.

In the face of these decisions, appellee announces its
truly amazing rule that: "He must reject, first, and he
can then take the rejected articles as the property of
the seller and either sell it after notice to the seller,
or appropriate it and sue for damages for breach of
contract."

Then, overruling *Hall Commission Company* v. *Crook*
40 So. 20; *Mobile Auto Co.* v. *Struges*, 66 So. 205; *Rosen-
baum's Sons* v. *Davis & Andrews*, 71 So. 388; *Bowers*
v. *Music Co.*, 74 So. 774, and *Cash Register Company* v.
*Hude*, 80 So. 378, it further reiterates that the buyer
cannot accept and appropriate the property to his own
use, with knowledge of the patent defects, or even the
latent defects, and then repudiate his acts when called
upon to pay, or sue for damages.

Appellee undertakes to read into Mr. Sharp's use of the word "accept" an intentional waiver and release of every claim held by him for appellee's admitted wilful violation of its contract; this is the same contention made in each of the cited cases. What Mr. Sharp did was to keep the brick for which he had already paid and use them in his building. This court, in announcing the two courses open to an injured person used the words "take," "receipt," retain," "acceptance;" and in the sense that he took, received and retained the inferior brick, Mr. Sharp accepted it. So were the bad oats, the unsatisfactory automobile, the unmerchantable chops, the "groan box" and the cash register accepted.

In conclusion, we repeat that this court has repeatedly stated that a buyer has two remedies, while in this instance appellee and the lower court would hold Mr. Sharp to only one remedy. Therefore the judgment of the lower court must be by this court reversed.

H. Cassedy, for appellee.

The record in this case does not disclose a case of sale by sample; nor a case of an article to be manufactured according to some specification nor a case of the fitness of the thing sold for the use, to which it was to be put; nor a case of an article for resale; nor a case involving the question of latent defects not discoverable by inspection; nor a case of express warranty, or as to that matter any warranty at all. The sole and only question, in the main, which is involved and the item upon which the jurisdiction of the circuit court was invoked, is whether or not, if there was an implied warranty of equality this warranty would survive acceptance.

The position of the appellant and the position of the appellee, as shown by the brief of appellant and his wonder that the learned circuit judge could have arrived

at the conclusion that he did, has proceeded along parellel lines which can never cross, and if the appellant's contention is adopted, the law as laid down by the supreme court of this state in a number of decisions will be left hopelessly in conflict. Teidman on Sales, 187.

"The general rules of the English and American Law look to the fostering of self reliance in the individual for the vindication or protection of his interests if the individual can, by the exercise of reasonable prudence, protect himself. Hence the cardinal rule of the law of sales is embodied in the maxim *caveat emptor;* and it provides that there is ordinarily no warranty for the quality unless one is expressly demanded or given."

As far back as *Anderson* v. *Burnett,* 6 Miss. 165; 5 S. & M. the Mississippi court, by TROTTER, J. says: "The true rule appears to be, that the seller is liable to an action of deceit if he fraudulently misrepresents the quality or condition of the thing sold in some particular of which the buyer has no equal means of knowledge with himself. 2 Kent 382. But it is believed to be a well-settled principle of the law, that if the defect complained of was open equally to the observation of both parties, it is not embraced by a warranty even against all defects, nor any representation of the vendor. It was upon this ground held, that if a horse is warranted sound, and yet has some visible, palpable defect, which can readily be discovered by a prudent vigilance and attention, the buyer cannot ground an action upon the warranty on account of such defect . . . These principles fully authorized the first instruction which the court was asked to give the jury, that if they believed that the defendant had a full knowledge of the condition or situation of the town in regard to the subject of the representation that he could not complain if it was false." "Surely a man cannot complain of a false representation, unless it has been the means of deciving

him. It was therefore, as we conceive, error in the court
to refuse the charge." See, also, *Sharpley* v. *Reese*, 1.
Miss. Dec. 523 and notes; *Reed* v. *Randall*, 29 N. Y. 358,
86 Am. Dec. 305, *Lbr. & Box Co.* v. *Ritier Lumber Company*, 82 C. C A. 527.

In *Steuder* v. *Bleistein* (N. Y.) 5 L. R. A. 702, the
case of *Reed* v. *Randal*, is re-affirmed, and the New York
cases on the same subject are discussed in the opinion.
The case of *Stilwell etc.* v. *Biloxi* etc., 78 Miss. 779,
while dealing with an express warranty as to capacity,
adopts the doctrine of *Reed* v. *Randall* and *Steuder* v.
*Bleistein* (the New York rule). The court says: "The
use of the machine by appellee after its notice of May
20, 1896, and its operation by appellee from June 23,
1896, constituted an acceptance of it which it cannot re-
pudiate or deny. It was so used by the appellant right-
fully or wrongfully, and a wrongful use will not be
indulged; and such use amounted to a claim of the prop-
erty as its own, and was tantamount to an acceptance of
it under the purchase contract." The court further pro-
ceeds: Benj. Sales (6 Am. Ed. by Bennett), sec. 703,
says: "When goods are sent to a buyer in performance
of the vendor's contract, the buyer is not precluded from
objecting to them by merely receiving them; for re-
ceipt is one thing and acceptance another. But receipt
will become acceptance if the right of rejection is not
exercised within a reasonable time, or if any act be
done by the buyer which he would have no right to do
unless he were the owner of the goods. The appellant,
however, having guaranteed the ice machine to do certain
specified work, it is bound, notwithstanding the accept-
nace by the appellee, to make good such guaranty  . . .
In such case the guaranty survives the acceptance
. . . "And further: "It is perhaps needless to say
that the appellee, having by its conduct accepted the
ice machine and machinery, is entitled to no deduction
of the purchase price except that rising from some

breach of guaranty. *Steuder* v. *Bleistein* 115 N. Y. 316, 325; S. C. 22 N. E. 243; S. C. 5 L. R. A. 702;'' The case of *American Steel Hoop Co.* v. *Searles,* 93 Miss. 1, in view of the other decisions cited, disposes of this case in both of its aspects.

The case of *Watkins* v. *Guthrie Co.,* 38 So. Rep. (Miss.) 370, again commits this court to the New York doctrine, i. e., that a patent defect which is obvious cannot be availed of after acceptance, or more correctly, after inspection and acceptance, and that warranty as to quality, either express or implied, does not cover such defects. The court says in this case: ''Appellants had the 'right and ample opportunity to inspect the corn before shipping it off. Their neglect to inspect it, the assumption by them of ownership, and the consignment by them of the car to their customers at Amory, conclusively establish an acceptance of the corn, and bring them within the rule of *caveat emptor.* They can have no relief because of a patent defect which the most superficial examination would have disclosed.''

In the instant case, now before the court, Mr. Sharp repeatedly says he accepted the brick, after examination, and after knowing, as he says, that they were not up to the grade which he purchased, and that he placed all of them except a very few, in his house.

## Reply To Brief Of Appellant.

The first case cited by appellant, ''from other jurisdictions'' is *Wisconsin Red Pressed Brick Company* v. *Hood,* 60 Miss. 401, 51 A. S. R. (Am. Rep.) 539. This case is an authority for the contention herein before argued on behalf of the appellee. Referring to Vol. 51 at page 540, it will be seen: ''Hood, in his answer to the complaint, alleged he had contracted for bricks of the first quality, and in all respects fit and suitable for use in such buildings; that as the bricks were received, they

appeared to be of the quality agreed upon; that he relied upon such appearance; that he was unable to discover any defects and so put them into the walls; but that there were latent defects in the bricks not apparent or discoverable until they had been placed in the building and exposed to the wind, weather and changes of temperature" etc., "that they were valueless by reason of a hidden fault, or through a hidden defect in their construction which fault or defect could not be detected by mere inspection or examination" etc: Responding to this the court said, on page 542; "If the bricks were not what plaintiff agreed to deliver, did not conform to the conditions of its contract as to kind, quality, or grade, and this was visible when they reached the purchaser, or could then have been discovered by the use of ordinary means, the latter could have refused to accept them. No one can question this right." The case has no bearing upon the case at bar except to the extent above noted, it being a case based upon a warranty the breach of which was not discoverable by ordinary inspection, which warranty of course, would survive acceptance.

The second case referred to from "other jurisdictions" the "Star A Star" Shingle case, *Springfield Shingle Company* v. *Edgewood Mill Company,* 101 Pac. 233. This same case is reported in 35 L. R. A. (N. S.) page 258, and appended is a note by "A. G. S." of 34 pages discussing the subject, entitled; "Effect of sale with particular description of kind or quality." Counsel in his quotation from this case in his brief has discovered language used by the learned court which destroyed the case as authority for his contention. Part of the language quoted is as follows: "When a person buys a particular thing, he cannot be compelled to take some other thing even if like the thing he bought. He has a right to insist on the terms of his contract. If he has unwittingly received that which he has not bought, he has the right

to return it, or keeping it, to recoup when sued for the stipulated price." etc., but by reference to the excellent note, it will be seen that this case seems to be unique and contrary to the weight of authority, and I respectfully direct the attention of the court to the note, asking particular attention to subdivision "c" on page 268, to division "v" page 270, subdivision "b" on pages 280-281. The note seems to bear out the contention of appellee herein, and is respectfully cited as authority. The words of description are not generally considered as a warranty but if even so considered, the warranty does not survive acceptance where the supposed breach thereof is patent and apparent from inspection. While counsel cites the "Star A Star" Shingle case and refer the court to 101 page 233, where it may be found, inadvertently leaving out the reference to 35 L. R. A. (N. S.) 258, where the note may be found, he draws from the note on page 283, under the title *"contra"* four of his cases cited as additional authority. A perusal of the note subdivision VIII, on page 283, will throw more light upon the question further illustrating that the case does not reflect the weight of authority on the subject.

Coming now to the Mississippi cases cited by counsel, *Westmoreland* v. *Walker*, 25 Miss. 76, involved a warranty of soundness, a latent defect, which survived acceptance. *Hall Com. Co.* v. *Crook*, 40 So. 20. The court held in this case that the plaintiffs had two courses open to them. They could have rejected the grain and sued for damages for breach of the contract, or they could pay the contract price, take the grain, and recover the difference between its value and the value of grain of the quality contracted for. And the same is apparently held in *Rosenbaums Sons* v. *Davis,* 71 So. 388.

The question as to a warranty, express or implied, which would survive acceptance, did not arise in either of these two cases. In both cases the grain was rejected as not complying with the contract, and the Seller was so

notified. The suit was one for damages for a violation of a contract. These cases differ from the case at bar in one most important particular. Here the brick were accepted and used, placed in a building. The complaints of the buyer from time to time could not amount to rejection. He continued to receive and accept the shipments, in fulfillment of the contract. The buyer was not required to accept something he did not buy. He could refuse. He had a reasonable time in which to inspect even though he had received the brick from the carrier and paid the price. He adopted none of these safeguards. He accepted the brick and put them all in his building after he knew they were not what he supposed he had purchased. *Mobile Auto Co.* v. *Struges,* 66 So. 205.

The automobile had been purchased as a new car. There was a warranty which would survive acceptance. But the purchaser did not accept the car as according to contract. He did the thing he had a right to do. He rejected the car after giving the seller notice and disposed of it to the best advantage. His rejection was seasonably made. Had he kept the car and the defects had been apparent and discoverable from inspection and five or six months afterwards he had sued for the difference in value, he could not have recovered. He must avail himself of his option and his remedies without delay, or he waived his rights and his estoppel to claim them by his conduct, in so far as defects discoverable by inspection are concerned. The same thing can be said in the grain cases. *Bowers* v. *Music Co.,* 74 So. 774. This was a case of express warranty which survived acceptance. *National Cash Register Co.* v. *Hude,* 80 So. 378. This case was also a case of express warranty which would survive acceptance.

To the casual observer, or the layman, the law as laid down in the decisions in Mississippi, might appear to be conflicting upon the subjects here discussed. The learned judge below did not think they were in conflict,

as applied to this case because it appeared beyond a doubt, from the statements of the plaintiff as a witness reiterated a dozen or more, times, and never in any way qualified by him, that he had accepted the brick, and that he had not at any time rejected them. That the things he complained of were apparent, obvious, discoverable upon inspection, and that he had inspected every shipment and knew what they were when he accepted them.

I respectfully urge that this judgment should be affirmed.

Smith, C. J., delivered the opinion of the court.

The appellee is a corporation engaged in the manufacture of brick at Brookhaven, Miss., from which the appellant ordered by mail several carloads of brick to be delivered at Shaw, Miss. As each car of brick was shipped to the appellant, a draft for the price thereof was drawn on him by the appellee to which the bill of lading was attached and forwarded to the Bank of Shaw, which draft the appellee was compelled to pay before receiving the bill of lading and the brick represented thereby. Claiming that the brick delivered to him were inferior in quality to those ordered, the appellant instituted this suit against the appellee for the recovery of the difference between the value of the brick ordered and those received.

The evidence introduced by the appellant on the trial in the court below supports the allegations of his declaration, but on motion of the appellee it was excluded by the court, and the jury instructed to find for the appellee, and there was a verdict and judgment accordingly.

The contention of the appellee in support of this ruling of the courts is that its implied warranty of the quality of the brick did not survive the acceptance

thereof by the appellant, but that the law is to the contrary will appear from *Hall Commission Co.* v. *Crook,* 87 Miss. 445, 40 So. 20, 1006; *Mobile Auto Co.* v. *Surges,* 107 Miss. 848, 66 So. 205; *Rosenbaum's Sons* v. *Davis & Andrews Co.,* 111 Miss. 278, 71 So. 388; *National Cash Register Co.* v. *Hude,* 119 Miss. 36, 80 So. 378.

*Reversed and remanded.*