## McELROY v. LONG et al.
### No. 12419.

United States Court of Appeals
Fifth Circuit.

Nov. 6, 1948.

---

Young H. Fraser and H. Fred Gober, both of Atlanta, Ga., for appellant.

Estes Doremus, of Atlanta, Ga., and Marshall T. Adams and S. H. Long, both of Tupelo, Miss., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

In this proceeding we are called upon to determine whether, under Mississippi law, there existed an implied warranty of good condition in connection with livestock sold to appellant at auction.

The appellees, as plaintiffs below, sued the appellant in assumpsit on an open account for $3443.00, the price of 24 cows purchased by appellant at an auction conducted by appellees on March 5, 1947, in Tupelo, Mississippi. Defendant denied any liability and, by counterclaim, sought to recover from appellees the sum of $6193.88, representing the purchase price and expenses incurred in connection with cows purchased on that date, and on two previous occasions, which had died of a disease known as hemorrhagic septicemia, less the amount claimed by appellees. The defendant alleged that the plaintiffs expressly and impliedly warranted that the cows were sound, normal, and healthy at the time of sale. In answer to the counterclaim, plaintiffs averred that, purchasing at auction, defendant bought at his own risk and that the bill of sale was a contract in writing, the terms of which could not be varied by parole proof. At the close of the testimony, upon motion of the plaintiffs, the court below directed the jury to return a verdict for the plaintiffs. From the judgment entered upon that verdict defendant appealed.

In this court appellant contends (1) that the evidence was in conflict with respect to an express warranty that the cows were sound and healthy when they were sold, and that, therefore, the existence of an express warranty should have been submitted to the jury for determination; and (2) that the court erred in holding that there was no implied warranty under Mississippi law in sales of this character and that the rule of caveat emptor applied.

The evidence in the main was without dispute and briefly is to the effect that the appellees, three partners, were engaged in the auction business in Tupelo and Corinth, Miss., under the name of Huey Long Commission Co. At the auctions, the company sold, generally, cows belonging to farmers, dealers, and cow traders; it billed a purchaser immediately after accepting his bid; and the purchaser paid the amount upon taking possession of the cows he had bought. The appellant was in the dairy business in DeKalb County, Georgia. He testified that three times he bought cattle at the Commission Company auctions, suffering losses on each purchase: On November 20, 1946, he bought and paid for 24 cows; 3 of these cows died from hem-

orrhagic septicemia soon after reaching his dairy in Georgia. On January 29, 1947, he purchased 45 cows; 21 died from the same disease soon after reaching his dairy. On March 5, 1947, he purchased 24 cows; 11 of these died from the disease within a week after reaching his dairy. When he discovered that one of the cows among the last group purchased was sick, he stopped payment of the check which he had given to cover his purchase on that date.

The account of sale given the appellant by the Commission Company on March 5, 1947, had printed across the top of it the legend, "No guarantee against sickness or death. We act as agents only. * * *" This statement is printed on a large sign behind the auctioneer and opposite the seats of the buyers. Appellant testified that prior to the hour of the auction on March 5, he approached Mr. Long and brought to his attention the loss he had sustained from death among the cows he had purchased in November, 1946, and in January, 1947; that he stated to Mr. Long that he thought he was entitled to some consideration with respect to the cows which had died; and that Mr. Long replied, " * * * go ahead and buy what you want out of the sale ring, and whatever is right about it, we will do it."

Before the trial court directed a verdict, it inquired of the appellant's attorney whether he was insisting upon an express warranty or relying on an implied warranty, and the attorney replied, "We have to limit our cross-claim to the implied warranty." This statement in itself cannot be taken for less than an acknowledgment that there was no evidence to support an allegation of express warranty and that recovery under express warranty had been abandoned. The cause was thus rested squarely upon implied warranty.

■ It is clear from the evidence that appellees in the conduct of their auction business sold cattle for a large number of owners; and that the auctioneer did not, at the auction, disclose the name of his principal. It is the rule, generally, that an auctioneer who sells property without di- vulging his principal is considered to be the vendor himself and, as such, responsible to the vendee for title or for breach of warranty. The fact that he is known to a bidder to be an auctioneer, by profession selling as an agent for others, is of no import and is no notice that he may not be selling his own property.[1] This seems to be the rule in Mississippi, for little or no distinction is made between sales of personal property by the owner and sales by those who purport to sell by virtue of authority in fact.

■ In an early case, Otts v. Alderson, 10 Smedes & M., Miss., 476, referring to a sale of personal property, the court expressed the view that the general rule is that the purchaser buys at his own peril, caveat emptor, unless either the seller give an express warranty or the law imply a warranty under the circumstances of the case, or unless the seller be guilty of fraudulent representation and concealment in respect to material inducement to the seller. In Joslin v. Caughlin, 26 Miss. 134, the court reaffirmed the rule stated in Otts v. Alderson, supra, and added that the rule is of even stricter application where the sale is by an officer authorized by law to make public sales.

In Bellville Supply Co. v. Dacey, 141 Miss. 569, 106 So. 818, 819, the court said:

"The sale here in question was not of an article by sample or description, without an opportunity of inspection by the buyer until after delivery, as was the case in Commission Co., Hall, v. Crook, 87 Miss. 445, 40 So. 20, 1006, Mobile Auto Co. v. [R. W.] Sturges [& Co.], 107 Miss. 848, 66 So. 205, Lumbermen's Supply Co. v. Poplarville Sawmill Co., 117 Miss. 274, 78 So. 157, Sharp v. Brookhaven [Pressed] Brick Co., 120 Miss. 850, 83 So. 274, but was a present executed sale of an existing article, of which the seller was not the manufacturer, then open to examination and inspection by the purchaser, in which character of sale there is no implied warranty of the quality of the article sold, in the absence of fraud on the part of the seller, unless the defects therein are latent,

---

[1] See 5 Am.Jur. 488, par. 38; and 7 C.J.S., Auctions and Auctioneers, § 13(3), page 1270.

and 'the seller knew the buyer did not rely on his own judgment (in accepting the article) but on that of the seller, who knew or might have known the existence of the defects', Otts v. Alderson, 10 Smedes & M. [Miss.], 476; Simmons v. Cutreer, 12 Smedes & M. [Miss.], 584; Joslin v. Caughlin, 26 Miss. 134; 1 Williston on Sales (2d Ed.) § 228 et seq.; 2 Mechem on Sales, § 1311 et seq; 24 R.C.L. p. 178, § 451 et seq."

To the same effect see Industrial Finance Corporation v. Wheat, 142 Miss. 536, 107 So. 382; Gerard Motor Co. v. McEachern, 150 Miss. 837, 116 So. 816; Wade & Sons v. Bateville Hog Co., 139 Miss. 434, 104 So. 145; Dunagin-Whitaker Co. v. Montgomery, 117 Miss. 666, 78 So. 580.

■ It is undisputed that prior to the auction appellant was privileged to examine and inspect the cows to be sold, and after the auction could have rejected any cow found to be diseased or showing signs of disease. This right, however, ended when the purchase price was paid and the cows removed from appellees' barn. The evidence is uncontradicted that appellees were without knowledge of the existence of any latent disease in the cows auctioned by them and purchased by appellant. In view of these undisputed facts, the statement in Williston on Contracts, (Rev.Ed.) Vol. 4, p. 2720, § 988, is apposite:

"* * * where inspection is had or may be had at the time the bargain itself is made, the tendency in the United States has been to hold that at least, in the absence of guilty knowledge on the part of the seller, the inspection precludes the existence of any implied warranty, regardless of whether the defect is latent."

The contention of the appellant that the sale was voidable because cows owned by the Commission Company were sold along with cows belonging to others, and that the company bid at the auction in its own behalf, has no application. This is not a suit brought by appellant to rescind the sale and receive back his money; only in such a suit would the authorities cited by appellant be applicable.

The judgment appealed from is
Affirmed.