(34 South. 691.)

No. 14,786.

BARROW & LE BLANC v. PENICK & FORD.*

(May 25, 1903.)

CONTRACT OF SALE—INDIVISIBILITY—BREACH —RIGHTS OF PARTIES.

1. The contract for the sale of one entire crop of molasses is indivisible, and, if broken, cannot be dissolved for part, but must be set aside as a whole, or not at all. If, therefore, the vendor diverts part of the crop, this gives rise to an action in damages, but does not release the purchaser from the obligations of the contract, he not asking that the contract be set aside as a whole, nor offering to restore that part of the crop already received by him, and to place matters in the situation in which they would have been if the contract had not taken place.

2. The purchaser who pays a sound price is entitled to a sound article. The purchaser of an entire crop of molasses to be manufactured is not bound to receive molasses manufactured from frozen cane, classed on the market as unsound goods.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by Barrow & Le Blanc against Penick & Ford. Judgment for defendants, and plaintiffs appeal. Affirmed.

Alfred D. Land, Jr., and Hébert & Hébert, for appellants. Wise, Randolph & Rendall and Edward Beverly Herndon, for appellees.

PROVOSTY, J. The plaintiffs, Barrow & Le Blanc, sugar planters, sold to the defendants, Penick & Ford, buyers of molasses, their entire crop of molasses of the year 1901 on their Pecan Grove plantation, at 28 cents per gallon, delivery to be made as manufactured. Deliveries went on under the contract, and payments were promptly made, until defendants rejected a lot of molasses, assigning as a reason that it had been made out of frozen cane, and was unsound. Other shipments that followed were rejected in the same manner until the entire remainder of the crop, 608 barrels, had been similarly rejected. Defendants persisting in their refusal to accept the molasses, plaintiffs caused the same to be sold for the account of defendants. It was sold as unsound molasses,

---

*Rehearing denied June 22, 1903.

and realized only 15 cents per gallon. Plaintiffs bring this suit for the difference between this price and the 28 cents called for by the contract, namely, $4,568.54.

Defendants object that the plaintiffs are not in a position to invoke the enforcement of the contract, having themselves violated it by selling to other parties 223 barrels of the molasses. They next plead that they were not obliged to accept an unsound article, and that the rejected molasses had been made from frozen cane, and was unsound.

We agree with the learned judge a quo that plaintiffs are not shown to have diverted more than 60 barrels, and we agree with him that this diversion, though a breach of the contract, does not preclude recovery. The sale was of the entire crop. In the contemplation of the parties what was being sold was a single thing—the entire crop. The contract was, therefore, indivisible. "The obligation is indivisible, though the thing or the fact which is the object be by its nature divisible, if the light in which it is considered in the obligation does not admit of its being partially executed." Article 2109, Civ. Code. The light in which the parties "considered the obligation" was that "it would not admit of being partially executed," but the one side would have to deliver the entire crop or none, and the other side take the entire crop or none. As a consequence of this indivisibility, the contract cannot be set aside for part only, as defendants are seeking to do. They are asking to be relieved from the performance of the contract as to the 608 barrels, while not proposing to restore the 1,200 barrels received by them under and by virtue of the contract; in other words, they are proposing to set aside the contract for part, and let it stand for part—that is to say, to divide it, when it is indivisible. The breach of a commutative contract, or, in other words, the accomplishment of the dissolving condition inherent in all commutative contracts, does not have the effect of ipso facto annulling the contract. It merely gives rise to an action in resolution. Civ. Code, arts. 2045, 2047. Plaintiffs' breach gave rise to this action, and defendants might have demanded the annulment of the contract; but, the contract being indivisible, they would have had to demand its annulment as a whole, and would have had to re-

store the 1,200 barrels received under and by virtue of it; that is to say, place matters in the situation in which they would have been if the contract had not been entered into. Civ. Code, arts. 2045, 637. This restoration they are not offering to make, and it would be out of their power to make, they having disposed of the goods. Therefore it was correct to say that their only remedy was by action in damages.

We agree with the district judge again in his conclusions as to the unsoundness of part of the 608 rejected barrels, and as to the price having been a sound price, and as to the defendants not having been obliged to accept an unsound article. Perhaps, if passing on the case from first impression, we should not fix the number of unsound barrels so high as 383, but it may well be that the learned judge's appreciation of the matter is the correcter. At any rate, we are not in a position to say he erred. The price was the same as that at which Holloway and Postell, neighboring planters, making the same grade of molasses, sold their first lot, 100 barrels, and was one cent higher than that at which they sold their second lot, 500 barrels. It was the same price at which plaintiffs sold to Frolichstein, and with a guaranty at that. Plaintiffs' counsel argue that the sale to Frolichstein was made before the opening of the season, and was, therefore, in the nature of a speculation. And so to a certain extent it was; but speculators, like other people, are guided by market prices, and, for all the court knows, the market price at the date of the guaranty sale to Frolichstein was the same as at the date of the sale without guaranty to defendants.

Defendants wanted plaintiffs to guaranty that the quality of the crop should be equal to a lot of Pecan plantation molasses sold on the Sugar Exchange on the 15th of November, and plaintiffs refused to give this guaranty. On this refusal, and on the absence of warranty from the contract, plaintiffs base the contention that defendants were obliged to accept an unsound article. Under this interpretation the plaintiffs might have gone on manufacturing molasses out of frozen cane long after the article had ceased to be such as was contemplated by the contract. They would have had, as Mr. Le Blanc expresses it, the "whiphandle" of defendants.

We do not think the contract contemplated anything of that kind, but that the only warranty excluded was that of quality, not that of soundness. On this point we are unable to differentiate the case from that of Peterkin v. Martin, 30 La. Ann. 894, where this court held that, where the sale is made without opportunity of inspection, the purchaser who pays a sound price is entitled to a sound article.

The judgment is affirmed.