## D. Rosenbaum's Sons et al. *v.* Davis & Andrews Company et al.

[71 South. 388.]

1. Attachment in Chancery. *Wrongful attachment. Attorney fees. sales. Rights of purchaser. Delivery of grain. Remedies of seller. Right to retain property. Action. Pleading. Implied warranty. Acceptance. What constitutes.*

Our statute authorizing an attachment in chancery makes no provision for an award of attorney fees and an allowance for such cannot be justified on the ground that the suit was maliciously brought without reasonable or probable cause.

2. Same.

In such case damages if any would only be recoverable in a separate action based upon a decree terminating in defendant's favor the attachment suit, and after proper pleading and proof showing malicious prosecution in that suit.

3. Sales. *Rights of purchaser. Delivery of grain.*

Where a shipper consigned grain to its own order attaching a draft to the bill of lading and directing a bank to which the same was sent not to deliver the bill of lading until the draft was paid, in such case the bank was constituted the agent of the shipper in making delivery.

4. Same.

If the proof shows the grain was badly damaged when it was delivered, then the defendant shipper did not discharge its obligation of delivering sound and merchantable grain and when plaintiffs received unsound and unmerchantable grain, they had a right to retain the shipment and sue defendant for consequent damages.

5. Sales. *Action. Pleading.*

In an action against a seller for breach of an implied warranty, an answer admitting the sale of the grain, but denying any implied warranty and denying that the grain delivered was not good and merchantable, does not raise the issue that the contract was made with a broker of limited authority and that the minds of the parties did not meet.

6. Same.

Where a retail merchant deals with a wholesale concern in the business of shipping and furnishing grain for merchantable pur-

poses there is an implied warranty that the grain shipped shall be sound and merchantable.

7. SALES. *Contracts. Construction.*

Where a retail merchant purchased a car load of grain, the contract being made in his name and the draft being drawn on him, the fact that there were others interested in the purchase and that they paid a proportionate share of the purchase price, does not show that there was no contract between the seller and the retail merchant.

8. SALES. *Acceptance. What constitutes.*

Where complainants were allowed by a railroad company to open a car and take grain consigned to them before they had paid the draft attached and received a bill of lading, but the condition of the grain was not discovered until after it had been removed, the indulgence of the railroad company did not constitute an acceptance by complainants precluding them from recovery of damages because the grain was unmerchantable, when it was understood by the railroad company when the grain was removed that complainants would pay the draft, procure the bill of lading and satisfy the freight charges.

APPEAL from the chancery court of Lauderdale county. HON. SAM WHITMAN, Chancellor.

Suit by D. Rosenbaum's Sons and others against Davis & Andrews Company and others, begun by attachment in chancery. From a decree for defendant, complainants appeal.

The facts are fully stated in the opinion of the court.

*Easterling & Bailey,* for appellants.

*Amis & Dunn,* for appellees.

STEVENS, J., delivered the opinion of the court.

Appellants as complainants in the court below, sued out an attachment in chancery against appellee, a nonresident corporation doing a milling and wholesale grain business in the city of Memphis, Tenn. It appears that one W. S. McCallum, a broker in the city of Meridian, received certain quotations by wire from Davis & An-

drews Company as follows: "Three cars each natural chops and corn one dollar and twelve cents, seventy-seven cents, if kiln dried one dollar and seventeen cents, eighty-one cents." Mr. McCallum upon receipt of this telegram undertook to sell a carload of the chops and corn and offered to appellants one hundred sacks of chops at one dollar and twelve cents and seventy-five sacks of corn at seventy-seven cents per bushel. To make out a carload, Mr. Wells, a merchant of Meridian, agreed to buy one hundred sacks of chops at one dollar and twelve cents per sack, and Mr. McCallum himself agreed to take one hundred sacks of chops and seventy-five sacks of corn at the price named. It was agreed between Wells, McCallum, and appellants that the carload thus agreed to be taken should be shipped direct to appellants. The broker wired in the order as follows: "Ship Rosenbaum three hundred sacks chops one dollar and twelve cents, seventy-five sacks corn seventy-seven cents. Rush please." On receipt of this telegram, Davis & Andrews Company consigned the car of chops and corn to its own order at Meridian and received from the railroad company "shipper's order notify" bill of lading. Appellee attached this bill of lading to a sight draft upon appellants and turned the sight draft and lading over to the Bank of Commerce & Trust Company of Memphis for collection. The Memphis bank forwarded the draft to a bank in Meridian, which subsequently collected the proceeds of the draft and turned the bill of lading over to appellants. It is the proceeds of this draft in the hands of the Meridian bank which appellants by their attachment impounded and seek to hold liable for damages alleged to have been sustained by appellants on account of rotten, unsound, and unmerchantable grain covered by the shipment in question. It appears that, when the shipment arrived in Meridian, appellants were notified and, without first paying the draft, they opened the car and proceeded to unload the grain. McCallum and Wells were also noti-

fied and, in unloading the car, received their *pro rata* of the cargo. After the chops and corn had been unloaded and placed in the store of appellants, they claim to have noticed that the grain was damp and decaying from overheat, and on further inspecting they notified the broker, and he in turn notified appellee. After the shipment was unloaded, appellants collected from Mr. Wells and from Mr. McCallum their part of the purcase price and then went to the bank and paid the sight draft in full and received the bill of lading. Several days elapsed between the time of the arrival and the time appellee actually received notice from its agent of the complaint or alleged damages. It appears, however, that the broker on examining the shipment admitted the fact that the shipment was damaged, and the evidence afterwards introduced by appellants on the trial of this case sustained the allegations of the bill that the grain was in fact damp, unsound, and unmerchantable. The only evidence offered by appellee to contradict this testimony was the evidence of Mr. Davis, the secretary and treasurer of appellee company, who, by deposition, testified that the grain was checked out by him in Memphis, and at that time was in sound condition. Mr. Wells also made complaint in reference to his portion of the shipment, and he, as well as appellants in an effort to liquidate their damages, advertised the grain which they had received to be sold at public auction at the storehouse of each on April 1, 1912, and at this auction sale appellants purchased themselves the damaged grain at a price of fifty cents per sack for the chops and twenty cents per bushel for the corn. Mr. Wells purchased forty-six sacks of his chops at his own auction sale at fifty-five cents per sack.

The bill of complaint filed by appellants seeks recovery, not only for the corn and chops purchased by them for their own store, but also for the shipment received through them by Mr. Wells. The bill was answered by appellee and the cause set down for hearing on bill, an-

swer, and proof. The chancellor dismissed the bill, and in his decree taxed appellants not only with the costs of court, but with an attorney's fee allowed the defendant in employing solicitors to defend the suit. From this decree, appellants prosecute this appeal.

Regardless of any other question in the case, the action of the trial court in awarding solictors' fees constitutes to that extent error. *Bonds* v. *Garvey,* 87 Miss. 335, 39 So. 492. Our statute authorizing this proceeding makes no provision for an award of attorney's fee and the allowance of this fee cannot be justified under the argument of counsel for appellee that this suit was maliciously brought without reasonable or probable cause. Even if the proof justified the serious charges of appellee, the damages, if any, would only be recoverable in a separate action based upon a decree terminating in its favor the present suit, and after proper pleadings and proof showing malicious prosecution of the present action.

But on the whole record we are driven to the conclusion that the chancellor is manifestly wrong. It is the theory of the bill that appellants, a mercantile establishment, had a right to expect from appellee sound and merchantable grain. Appellee at least undertook to deliver "natural chops and corn" in accordance with its quotation. The testimony on behalf of appellants abundantly shows that it had received grain, a part of which was wet, rotten, and worthless, and a part of which was slightly damaged. It cannot be said that this testimony, delivered by reputable witnesses in Meridian, is contradicted. It is true that Mr. Davis, an officer of the appellee company, and a Mr. Betts, foreman of the grain elevator and warehouse, gave testimony of the sound condition of the shipment when it was loaded. This grain, however, was consigned by appellee to its own order at Meridian, and the bank was constituted the agent of the shipper in making delivery. If the proof shows the grain was badly damaged when it was

delivered, then appellee has not discharged its obligation of delivering sound and merchantable grain, and, when appellants received unsound and unmerchantable grain, they had a right to retain the shipment and sue appellee for consequent damages.

It is contended by counsel for appellee that McCallum was an independent broker with limited authority to make contracts binding appellee, and that Rosenbaum and Wells testified that McCallum sold them kiln dried chops and corn, the price for which was in excess of that for natural chops and corn, and that therefore the minds of the parties never met, and there is no valid and binding contracts between appellants and appellee. The pleadings and proof, in our judgment, do not sustain this argument. The answer admits the sale of the carload of chops and corn to appellants, but denies that appellee contracted to furnish good, sound, and merchantable chops and corn, and denies that it in fact delivered corn and chops that were not good and not merchantable. The answer does aver that W. S. McCallum was a broker with limited authority and instructions. Conceding that either Rosenbaum or Wells, or both of them, expected to receive kiln dried chops, the complaint here is not on account of the chops not being kiln dried, but on account of their being rotten and unmerchantable. We think that the authorities fully sustain the proposition of law that appellee in this case as a vendor was under an implied duty of furnishing to merchants contracting with it grain that was sufficiently sound to be merchantable. It is not the case of a merchant selling to his customer grain purely for feeding animals. It is a case of a retail merchant dealing with a wholesale concern in the business of shipping and furnishing grain for merchantable purposes.

Appellants certainly had a contract with appellee for the shipment of that portion of the grain which appellants themselves agreed to take. McCallum was a broker receiving private quotations from his house. He

undertook to sell as an agent representing appellee. Appellee accepted the order and undertook to fill it. Its delivery was made direct to appellants, and its sight draft was upon appellants. It dealt directly and immediately with appellants, and it is idle to say that no contract in fact exists.

We do not, however, hold that appellant may recover damages for that portion of the grain delivered to Mr. Wells. Inasmuch as the case must be remanded for a new trial, we deem it proper only to suggest that probably Mr. Wells, in agreeing to take a portion of the grain, was a joint purchaser with appellants, and for any damages sustained by him he must institute his own suit and that against appellee.

The testimony shows that Wells has not demanded any damages from appellants, and that appellants have not paid Wells anything on account of his portion of the shipment, and, under any view of the contract, appellants have suffered no damages growing out of the shipment delivered Mr. Wells.

We are not prepared to say that appellants had a right to purchase the damaged grain at their own auction sale and thereby liquidate or fix the amount of their damages. The fact of this sale might be treated as a circumstance to be considered by the chancellor in arriving at the proper measure of damages. For the purposes of this opinion, it is really unnecessary for us to pass on this question.

There is no force in the contention that appellants, by taking possession of the car and unloading the corn before they paid the sight draft, thereby accepted the shipment and estopped themselves from complaint. In the first place, the premature unloading of the car was made possible through the indulgence or grace of the railroad company, which had a right to expect and receive from appellants, not only the freight on the shipment, but the bill of lading then in the hands of the

bank. In the next place, the proof shows that the damage was not fully detected until after the grain had been unloaded and placed in appellants' store.

The decree of the court below will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*