OLAF FOSSUM, Respondent, v. SAMUEL HALLAND and David Askegaard, Copartners Doing Business as Halland & Askegaard, Appellants.

(171 N. W. 870.)

**Sales — contracts of sale.**

1. In an action to recover the purchase price of certain potatoes at the contract price of $.50 per bushel, we *hold* that the evidence shows a delivery by the plaintiff to the defendant of the potatoes; that plaintiff is entitled to recover the contract price of the potatoes so delivered.

**Sales — marketable condition — necessity of counterclaim.**

2. The defendants claim the potatoes were not marketable and were frozen. They did not, however, set forth any counterclaim in their answer, thus, if there were delivery of the potatoes, defendants were liable for the contract price. Evidence shows the delivery.

Opinion filed March 18, 1919.

Appeal from the District Court of Richland County, North Dakota, *Frank P. Allen, J.*

Affirmed.

*W. E. Purcell,* for appellants.

"In the sale of an article to be used for food for human beings there is an implied warranty that the article is sound and is in fact suitable and proper to be used as food." Nelson v. Armour Packing Co. 76 Ark. 352; Wiedman v. Keller, 171 Ill. 93; Hoover v. Peters, 18 Mich. 51; Burch v. Spencer, 15 Hun, 504; Divine v. McCormick, 50 Barb. 116; Houck v. Berg (Tex.) 105 S. W. 1176; Jones v. Murray, 19 Ky. 83; Emerson v. Brigham, 10 Mass. 70; Ryder v. Neitge, 21 Minn. 70; Moses v. Meade, 1 Denio, 378; Farrell v. Manhattan Market Co. 198 Mass. 271.

*Wolfe & Schneller,* for respondent.

"To be available for defense the Statute of Frauds must be pleaded." 9 Enc. Pl. & Pr. 705, 706.

GRACE, J. Appeal from the judgment of the District Court of Richland County, Frank P. Allen, Judge.

The action is one to recover the purchase price of 650 bushels of pota·
toes at $.50 per bushel.   The action is based upon contract.   Plaintiff,
in substance, claimed the following agreement between the defendants
and himself:   That prior to the 22d day of October, 1913, plaintiff
sold and agreed to deliver to said defendants at Christine, North
Dakota, in a railway freight car, a certain quantity of potatoes to be
weighed by the wagon load on scales at Christine as the same were
hauled from the plaintiff's farm to said car; that defendants agreed to
pay for the potatoes at the rate of $.50 per bushel, the potatoes were to
be delivered in sacks, the defendants to furnish the sacks; that plaintiff
delivered 650 bushels of potatoes on the 20th, 21st, and 22d days of
October, 1915.

To the complaint, the defendants interpose a general denial.   They
further allege that in the month of October, 1913, plaintiff offered to
sell the defendants a carload of first-class, marketable, early Ohio pota·
toes loaded in a car at Christine, in the state of North Dakota, at the
price of $.50 per bushel; that plaintiff notified defendants that they had
loaded such potatoes on the car at Christine, and defendants examined
the same in said car and found them frozen and mixed with mud and
wholly unmarketable, unsalable, and worthless, and notified the plain·
tiff of said facts and refused to accept the same.   The following appear
to be the facts:

The plaintiff is a farmer residing about 3 miles from Christine, in
Richland county, North Dakota.   Defendants are merchants and reside
and do business at the village of Comstock in Clay county, Minnesota.
The two villages are about 9 miles distant from each other.   In the fall
of 1913, defendants were engaged in buying and shipping potatoes.
About the 13th of October, plaintiff was in the defendants' store at Com-
stock, Minnesota, and while there, the defendants agreed to purchase
plaintiff's potatoes, which were to be of the early Ohio variety.   Plain-
tiff claimed to have hauled to Christine 400 sacks of early Ohio potatoes,
and to have placed them in the box car on track at Christine on the 20th,
21st, and 22d days of October.   The potatoes were weighed on the scales
of one Johnsgaard, a merchant at Christine, and weight tickets issued
for them; there were twelve loads.   The weight tickets for ten loads are
in evidence and are marked as certain exhibits in the case.   The exhibits
representing two other loads were not received in evidence, the party

who weighed them not being present and they could not be identified by the plaintiff. Defendants contend they were to furnish the sacks in the first instance which should be delivered to plaintiff at Christine; that on final settlement plaintiff should pay for the sacks at the rate of 10 cents each. Plaintiff finished loading the car on the 22d day of October, 1913. On that day, plaintiff's father notified defendants by phone that the car was loaded, and requested that one of the defendants come to Christine and inspect the potatoes.. It is claimed by the defendant that later on the same day, the defendant Halland rode to Christine and inspected the potatoes. Plaintiff does not concede that Halland came over that day to inspect the potatoes. Plaintiff claimed that his father called the defendant Halland over the phone and told him that plaintiff had the car of potatoes loaded, stating that plaintiff could get a little more in the car, and telling the defendant there were between 600 and 700 bushels in the car, and that Halland said, "You better ship what you got. If you got any more left, we will get another car;" and that he asked him if he were coming over to look at the potatoes, and he said, no, he would not be there; Fossum asked to whom they should be shipped and Halland told them, "Halland & Askegaard at Kansas City. Send me the bill of lading and the weights." Fossum answered that would be done. The potatoes were billed by Olaf Fossum, the plaintiff, on the 22d day of October, 1913, to Halland & Askegaard at Kansas City, Missouri. This is also shown by the testimony of Clark, station agent at Christine. The plaintiff claims he mailed bill of lading and original weight tickets to defendants at Comstock. It appears the bill of lading was returned by the defendants to plaintiff's father, who again returned it to the defendants, and they retained the same. Plaintiff claimed to have loaded the potatoes in the box car No. 1739, bearing the initials "D. & M;" that it was not a Milwaukee car; that the car was billed out October 22, 1913, and was shipped out on the morning of the 24th to the consignees. Halland admits he received the bill of lading and the weights. Defendants claim that Halland went to Christine and inspected the potatoes on the day the loading was completed, and went to the store of Johnsgaard and notified him that he would not accept the potatoes on the ground that they were frozen, were not marketable, and were worthless. They claim, also, that the plaintiff caused the car to be billed to the defendants as consignees at Kansas City, Missouri, the

bill of lading with the weight tickets sent to the defendants; that defendants on receipt of the bill of lading and weights returned them to plaintiff's father, with the statement that, owing to the condition of the potatoes, they would not be received, and that later the plaintiffs returned the bill of lading and weights to the defendants without any note or explanation. The defendants contend that in the talk over the phone plaintiff's father instructed the defendants that if, upon inspection, the potatoes were found to be satisfactory, the defendants should settle for them with Johnsgaard, who was engaged in the merchandising business at Christine. This is denied by the plaintiff and his father.

Considering the pleadings upon which the issue was formed, we are of the opinion that there is presented but a single issue namely, Was there an acceptance by the defendants of the potatoes? If, as claimed by the plaintiff, his father, acting for him, called by telephone Halland at Comstock and from him received orders and directions that plaintiff should bill the car to Kansas City, Missouri, to Halland & Askegaard, and that was done in the manner as testified to by plaintiff, this would constitute an acceptance of the potatoes. If, on the other hand as defendants claim, they examined the potatoes and found them frozen, and not merchantable, and notified Johnsgaard, then there was no acceptance of the potatoes.

It appears to us, the testimony in this regard being conflicting, it was a proper question for the jury. It decided in favor of the plaintiff and must have believed his testimony in this regard instead of that of the defendants. The verdict of the jury disposes of this question, and its verdict finds substantial support in the evidence. The testimony in regard to the merchantable condition of the potatoes at the time of their delivery in the car is in hopeless conflict, though in this case it is not a material question, as we view it; for the effect of the verdict in plaintiff's favor is that the defendants accepted the potatoes as claimed by plaintiff. If the potatoes were not merchantable and the defendants accepted them in the manner claimed by plaintiff without knowledge of that fact, two remedies were open to the defendants. They could, in this action, have pleaded a counterclaim based upon the alleged fact, if it were a fact, that at the time of the acceptance they had no knowledge of the unmerchantable condition of the potatoes, and then have shown the actual value of the potatoes at the time of acceptance, and whatever

the jury found was the actual value at that time would be deducted from the contract price, and the balance would be the amount plaintiff was entitled to recover; or, if the facts are as defendants contend, they could have sued to recover the difference between the actual value of the potatoes at the time of the acceptance and the contract price based upon the same reasons above given. Defendants have not seen fit to resort to either of these remedies, and have relied upon their assertion of fact that they never accepted the potatoes by reason of their examination of the potatoes before shipment and their notice to Johnsgaard that they refused to accept the potatoes for the reasons above stated, and in this contention of fact, failed before the jury.

Defendants introduced in evidence the records of the weather bureau at Wahpeton, which is some distance from Christine and Comstock; it shows the maximum and minimum temperature at Wahpeton for the entire month of October. In the view we have taken, this matter becomes unimportant in this case as it now stands. If the defendant were relying upon the counterclaim, or if the suit had been brought to recover the difference between the contract price of the potatoes and their actual value as disclosed by evidence as to fitness for food or merchantable qualities, the maximum and minimum temperature in the vicinity of Christine, Comstock, and the vicinity where the potatoes were produced would at least be competent testimony in connection with the other testimony to determine whether or not the potatoes were frozen and thus became unmerchantable. In view of the fact that no counterclaim was pleaded, and the jury having determined there was an acceptance of the potatoes, the matter of temperature is an immaterial question in the present case. Defendants claim the case comes clearly within the Statute of Frauds in this, that it is claimed no part of the purchase price had been paid at the time the contract was made, or at any other time, and the parties having not entered into any written contract nor ever signed or delivered any note or memorandum showing purchase of potatoes.

The effect of the verdict of the jury, however, is to find that the defendants accepted the potatoes. It is clearly shown that the potatoes were delivered in the car. This disposes of the acceptance and delivery of the potatoes, and delivery having been made, it takes the matter out of the Statute of Frauds. The verdict of the jury appears to be for the

value of the weight of the ten loads of potatoes at $.50 per bushel, and does not include the two loads, the weight tickets of which were not received in evidence. We do not find any reversible error in the instructions when considered as a whole. We think there is no prejudicial, reversible error in the record, and judgment should be affirmed, and is affirmed, with statutory costs.

CHRISTIANSON, Ch. J. (dissenting). I dissent. It is undisputed that the potatoes which the defendants agreed to purchase from the plaintiffs were to be marketable potatoes. It was understood that they were to be shipped to Kansas City and placed on the market there. The defendants contend that Halland examined the potatoes in the car, found them to be worthless, and refused to accept them. It is undisputed that the defendants returned the bill of lading to the plaintiff, but that plaintiff refused to accept it. It is also undisputed that the plaintiff dug, hauled, and loaded the potatoes on the 18th, 20th, 21st, and 22d of October, 1913. And the testimony of the plaintiff shows that eight out of the twelve loads which went into the car were hauled on October 22d. The evidence of disinterested witnesses was to the effect that, before any of the potatoes were dug, the ground had frozen so hard that it was impossible to plow. The weather report made at the State School of Science at Wahpeton, a distance less than 30 miles from where the potatoes were dug and loaded, was offered in evidence, and it shows that the thermometer registered below freezing on each of the days the potatoes were dug and hauled, and that it recorded 22 degrees below freezing on the 22d of October. It seems that under these circumstances, it is more than likely that some of the potatoes were frozen. As already stated the defendant Halland claimed that he examined the potatoes and found them to be frozen. Apparently some of the jurors were of the opinion that some of the potatoes were frozen. After they had retired they returned into court for further instruction. A colloquy then took place between the court and some of the jurors. During the colloquy a juror, Brand, said: "As I understand it, we had to ascertain whether the defendants accepted the carload of potatoes, and the question in my mind was whether they ever did accept the carload of potatoes." Later, the juror Brand addressed the following inquiry to the court: "If we find that this contract had been accepted

by the defendant in any way, have we got to allow the full amount, value of the potatoes in that car, for the amount they made the deal for ?"

To this inquiry the court replied: "If you find that there was a contract, then it is for you to determine from the evidence in this case, the value of those potatoes and to give a verdict accordingly. You cannot arbitrarily give a verdict for more, or arbitrarily give a verdict for less. But from the evidence, provided you find that such a contract existed for the sale, upon the one hand and purchase from the other hand, of these potatoes, then from the evidence you are to give a verdict for whatever you deem the testimony shows to be the value of that carload of potatoes. There is no dispute, gentlemen, in regard to the 50 cents per bushel. There is no dispute in regard to that. But there seems to be some question in regard to two loads of those potatoes. It is for you, gentlemen of the jury, from that contract, that is, provided that you find in favor of the plaintiff in the action, then it is for you to determine from the evidence as to the number of bushels of potatoes in that car, and to figure that number of bushels at 50 cents per bushel, because there is no contention in regard to the 50 cents per bushel. That is agreed upon. But there is some question in regard to the number of bushels in this car."

Whereupon, the juror Brand made the following inquiry: "Are we allowed to take into consideration the condition of the potatoes in the car ?"

To this inquiry the learned trial court replied: "You may take into consideration the condition of the potatoes."

Whereupon, the juror Brand further inquired: *"If we find they are wholly or partly damaged, can we allow damages then? That is the point I was after when we came in here."*

To that inquiry the court said: "Yes, you should consider all the evidence."

To this the juror Brand replied: "I think that covers it all."

The court said: "Consider all the evidence."

In connection with what has just been recited, it should be mentioned that the defendants requested the trial court to instruct the jury that potatoes are an article of food, and that the plaintiff had the burden of showing that the potatoes in controversy were fit for food.

As already stated, there was a square conflict in the testimony as to

whether the potatoes had been injured by frost. From what occurred during the colloquy, it seems clear that at least the juror Brand believed that some of the potatoes were frozen. The question that bothered him was what verdict to return under the circumstances. He said: *"If we find they are wholly or partly damaged, can we allow damages then? That is the point I was after when we came in here."* The court answered this inquiry: "Yes."

It seems to me that under the evidence in the case the final instructions were at least misleading. There was little or no dispute as to the original arrangement between the parties. There was no question but that the plaintiff put the potatoes into the car, and billed it to the defendants at Kansas City. But the defendants had agreed to buy, and the plaintiff had agreed to furnish, marketable potatoes. Plaintiff brought suit. In order to be entitled to recover he must prove that he had complied with the terms of his agreement. He must prove that he had delivered to the defendants what he had agreed to deliver to them. Mechem, Sales, § 1154. Manifestly the delivery of potatoes damaged by frost would not constitute a delivery of what he had agreed to sell and the defendants had agreed to buy. 35 Cyc. 214, 216; Barrow v. Penick, 110 La. 572, 34 So. 691; D. Rosenbaum's Sons v. Davis & A. Co. 111 Miss. 278, 71 So. 388. But the court refused to instruct the jury that plaintiff must show that the potatoes delivered were fit for food, and, in response to the inquiry from a member of the jury, he in effect stated that the jury might return a verdict for the plaintiff even though the potatoes which plaintiff had put in the car were in fact frozen. In my opinion a new trial should be ordered.