## Evans-Terry Co. *v.* Liberty Mills.

[89 South. 809. No. 21937.]

1. Sales. *Whether carrier is seller's agent depends on whether seller has assumed burden of making delivery.*

   Whether the carrier to whom a seller has delivered goods for transportation to the buyer is the agent of the seller or the buyer in so doing depends upon whether or not the seller has assumed the burden of making delivery; if he has, the carrier is his agent for that purpose.

2. Sales. *Whether seller assumes burden of delivery is ordinarily a jury question.*

   Whether a seller who is to ship the goods sold to the buyer assumes the burden of delivery is, ordinarily, a question of fact for the determination of the jury, unless the contract of sale is in writing; but, if a verdict for the shipper on the theory that he had not assumed the burden of delivery would not be warranted by the evidence, the jury should be peremptorily instructed to find for the buyer.

3. Sales. *Facts including consignment to shippers order held to show prima facie that seller was to deliver.*

   The shipment by a seller to the buyer of the goods purchased under a bill of lading in which the goods are consigned to the shipper's order with direction therein to the carrier to notify the buyer, and the drawing by the seller on the buyer of a draft for the purchase price of the goods less freight thereon, to which the bill of lading was attached to be delivered to the buyer on payment of the draft by him to the bank to which it was forwarded for collection on surrender of which bill of lading to the carrier and the payment

of the freight on the goods it was authorized to deliver the goods to the buyer is *prima-facie* evidence that the delivery of the goods was to be made by the seller to the buyer at the point of destination.

4. SALES. *Prima-facie case of contract requiring seller to deliver is not met by evidence of seller's uncommunicated contrary intention.*

   This *prima-facie* case is not met by evidence of an intention on the part of the seller to assume no responsibility of the goods after delivery to the carrier not communicated to the buyer.

5. SALES. *Buyer not bound by printed memorandum at top of invoice not called to his attention declaring seller not responsible for goods delivered to carrier.*

   The buyer of goods to be shipped to him by the seller is not bound by a printed memorandum at the top of the invoice forwarded to him by the seller that the seller assumes no responsibility for the goods after he delivers them to the carrier for transporation to the buyer in the absence of evidence that such memorandum had been brought to the buyer's attention.

APPEAL from circuit court of Jones county.

HON. R. S. HALL, Judge.

Suit by the Liberty Mills against the Evans-Terry Company. Verdict and judgment for plaintiff, and the defendant appeals. Reversed, and judgment rendered for appellant.

*W. S. Welch,* for appellant.

In examining the question as to whether the railroad company was the agent of the shipper, or the purchaser, it is pertinent to look into the question of the place of delivery. If the point of destination is the place of delivery, then beyond a doubt, the railroad company is the agent of the shipper and not the purchaser. I do not know of a single exception to this rule. (35th Cyc. 332.)

The only case I have found in which a contrary rule was announced, is the case of *Scharff* v. *Meyer*, 133 Mo. 428. But in that case the articles purchased were consigned, not to the order of the shipper, but to the respective purchasers, drafts being drawn on the purchasers. From a

reading of the syllabi in *Scharff* v. *Meyer,* the case would seem to be in point, but on a careful reading of the case, it will appear that this case is not in point, but a later case from the supreme court of Missouri·is directly in point. I refer to the case of *Hunter* v. *Stanley,* 4 S. W. 869. *Kentucky Refining Co.* v. *Globe Co.,* 104 Ky. 559, 47 S. W. 602, 42 L. R. A. 353, 84 Am. St. Rep. 468; *Thick* v. *Ry. Co.,* 137 Mich. 708, 101 N. W. 64, 109 Am. St. Rep. 694; *Southern Lumber Co.* v. *Mercantile Co.,* 89 Mo. App. 141; *Ramsey* v. *Gore Mfg. Co.,* 22 L. R. A. 415.

The ordinary effect of passing title by delivery to the carrier may be controlled by taking a bill of lading. *Bruce* v. *Wait,* 3 Mees. & W. 15; *Wait* v. *Baker,* 2 Exch. 1, 17 L. J. Exch.—; *Turner* v. *Liverypool Docks, Trustees,* 6 Exch. 543, 20 L. J. Exch. 393; *Ellershaw* v. *Magniac,* 6 Exch. 570; *The Aurora,* 40. Rob. 218; *Jones* v. *Brewer,* 79 Ala. 545; *Berger* v. *State,* 50 Ark. 20; *Seymour* v. *Newton,* 105 Mass. 272; *Farmers & M. Nat. Bank* v. *Logan,* 74 N. Y. 568.

Agents for the purchase of goods may retain title in themselves until they are paid for, by taking a bill of sale in their own names and taking a bill of lading in such terms as to show their intention to retain the control and disposition of the property. *Farmers & M. Nat. Bank* v. *Logan, supra.*

Making goods deliverable to consignor's order. If the goods are sent by the consignor on his own account, subject to his own order, they remain his until some future act is done to transfer the title to the consignee. *Baker* v. *Fuller,* 21 Pick. 318. If the property is delivered to the carrier as that of the vendor and subject to his order, no title will pass to one claiming as vendee. *Lester* v. *Mc-Dowell,* 18 Pa. 91. If the goods are consigned to the shipper in the care of purchaser, the title will not pass so as to place them at the purchaser's risk. *Ward* v. *Taylor,* 56 Ill. 494.

The title does not pass if the property is shipped consigned to the seller. *Sohn* v. *Jervis,* 101 Ind. 578. If the shipping receipts direct the carrier to deliver the goods to

the shipper's order, the title will not pass so as to authorize a delivery to the buyer until such order has been given. *Libby* v. *Ingalls,* 124 Mass. 503.

Taking the bill of lading in the name of the consignor prevents the title from passing until the bill of lading is assigned. *McCormick* v. *Joseph,* 77 Ala. 236. If, by the bill of lading, the goods are to be delivered to the order of the vendee, it clearly operates, in the absence of rebutting evidence, to retain the title in the vendor, and indicates an intention that the property shall not pass. *Alabama G. S. R. Co.* v. *Mount Vernon Co.,* 84 Ala. 173.

If the contract is to deliver the goods on the rail or the vessel, the fact that after they are so delivered the seller takes a bill of lading in his name is merely evidence for the consideration of the jury as to whether he intended to deliver or not. *Gibbons* v. *Robinson,* 63 Mich. 146. If the bill of lading is attached to a bill of exchange and forwarded to a bank for collection the title will not pass. *Seelingson* v. *Philbrick,* 30 Fed. 601; *Bank of Rochester* v. *Jones,* 4 N. Y. 497, 55 Am. Dec. 290; *Indiana Nat. Bank* v. *Colgate,* 4 Daly, 41; *Erwin* v. *Harris,* 77 Ga. 333; *Bergeman* v. *Indianapolis & St. L. R. Co.,* 104 Mo. 77; *Sheppherd* v. *Harrison,* L. R. 5 R. L. 116, 40 L. J. Q. B. 148, 24 L. T. (N. S.) 857, 20 Week Rep. 1 affirming L. R. 4 Q. B. 196, 38 L. J. Q. B. 105, 177, 4 Q. B. 196, 406, 493, 38 L. H. Q. B. 105, 177; *Jenkyns* v. *Brown,* 14 Q. B. 496, 19 L. J. Q. B. 286, 14 Jur. 505.

There is no other reported case from the supreme court of Mississippi, in point, except the case of *Rosenbaum's Sons* v. *Davis & Andrews Co.,* 71 So. 389. This was the question involved in the case of *J. and G. Lippman* v. *Foote-Patrick Company,* which was affirmed without a written opinion. I had there the side of the contention on which my friend Hilbun finds himself. I lost in the lower court and the case was affirmed in the supreme court without opinion. I tried hard to convince the court that the consignment of the shipment to the order of the consignor made no difference and tried to invoke *Planter's Oil Mill*

*Manufacturing Co.* v. *Falls, et al.,* 29 So. 786, but without avail. There is, therefore, no decision in point in any reported case from Mississippi upon this particular phase of the case, except the Rosembaum case hereinafter referred to.

I think *Strauss et al.* v. *National Parlor Furniture Co.,* 24 So. 703, is directly in point on the question of submission of the issues to jury. *Thick* v. *Ry. Co.,* 109 Am. State Report 694; 35 Cyc. section B, 332; *Jones* v. *Brewer,* 79 Ala. 545; *Bergman* v. *Indianapolis Ry. Co.,* 104 Mo. 77,— S. W. 992; *Hunter Bros.* v. *Stanley,* 4 S. W. 869; *Jones* v. *Brewer,* 79 Ala. 545; *Naimeyer Lumber Co.* v. *Burlington Ry. Co.,* 54 Neb. 321, 74 N. W. 670, 40 L. R. A. 543.

It is further held, that the fact that the seller not only has the goods consigned to his order, but the bill of lading is forwarded to the seller's agent with draft attached to be delivered to the buyer on payment of the draft, is an additional circumstance showing the seller's intention of not parting with the title to the property sold. 35 Cyc. 333; *Ky. Refining Co.* v. *Globe Refining Co.,* 104 Ky. 559, 42 L. R. A. 353; see, also, 4 Ruling Case Law, page 15, section 18, Notes two and three; Benjamin on Sales (1 Ed.), section 455.

Leading case absolutely in point. For a leading case absolutely in point, I refer to the case of *Greenwood Grocery Company* v. *Canadian County Mill & Elevator Company,* 72 S. C. 450, 52 S. E. 191, 110 Am. St. Rep. 627, 5 Ann. Cases, 261, 2 L. R. A. (N. S.) 79; *Bank of Rochester* v. *Jones,* 55 Am. Dec. 290. See, also, the case of *Means* v. *Randall Bank,* 146 U. S. 620, 13 Sup. Ct. Rep. 186, 36 Lawyers Ed. See, also, Note to L. R. A. (N. S.) 79.

For an exceedingly clear and concise statement of the law, applicable to this case, see sections 306 and 307, pages 43 and 44 of Vol. 24, Ruling Case Law. See, also, the long list of cases cited in support of the statements there found. My opponent seems to be relying on Ruling Case Law and cited in the court below; pages 14 and 15 of Vol. 24. The mistake he makes is not differentiating between cases like

the one at bar and the cases where the vendor had his right of stoppage *in transitu* notwithstanding delivery to carrier and the vesting of title in consignee. The line of cases to which he will refer are easily distinguishable in principle from the case at bar. Mechem on Sales, sections 774 and 775; *Wait* v. *Baker*, 2 Ex. 1. Also see notes on American Decisions, 55 Am. Dec. 290.

Mississippi Case in Point. In the case of *D. Rosenbaum's Sons* v. *Davis & Andrews Co.*, 71 So. 388, it was held that where a shipper consigned grain to its own order, attaching a draft to the bill of lading, and directing a bank to which the same was sent not to deliver the bill of lading until the draft was paid, the bank became the shipper's agent, and, where the grain was damaged when delivered, the shipper did not fulfill its obligation of delivering sound and merchantable grain. In the Rosenbaum case, the testimony showed the grain was sound when loaded, but the bank was the agent of the consignor to make delivery and at time of delivery was made to the purchaser the grain was damaged. The case is decisive of the case at bar. *Carlos* v. *Roses*, 44 Law. Ed. 929; *Bank* v. *Smith*, 34 L. R. A. (N. S.) 295; *William Mercantile Co.* v. *Fussey*, 15 Mont. 511, Am. St. Rep. 699; *Dows* v. *National Exchange Bank*, 91 U. S. 618; *Emery* v. *Irving's Nat. Bank*, 25 Ohio, St. 360, 18 Am. Rep. 299; *Seeligson* v. *Philbrick*, 30 Fed. Rep. 600; *Chandeler* v. *Sprague*, 5 Met. 306, 38 Am. Dec. 404; and note *McCormick* v. *Joseph*, 77 Ala. 236; *Forcheimer* v. *Jervis*, 101 Ind. 578; *Jones* v. *Brewer*, 79 Ala. 545; *Moors* v. *Kidder*, 106 N. Y. 32; *First Nat. Bank* v. *McAndrews*, 5 Mont. 325, 51 Am. Rep. 51; Benjamin on Sales, sec. 567; *Farmers, etc., Nat. Bank* v. *Logan*, 74 N. Y. 568; *McNeal* v. *Braun*, 26 Am. St. 452; See *Ormond, et al.* v. *Henderson*, 77 Miss. 34, 24 So. 170; *Rubenstein* v. *Grossman Winfield Co.*, 69 So. 688 and 70 So. 210. See, also, the interesting and instructive case of *Barrow & LeBlanc* v. *Penick & Ford*, 34 So. 691.

So far we have assumed for the sake of argument, that delivery was to be at point of consignment. Let us now

examine the contract. No matter where the flour was to be delivered the contract was not carried out by Liberty Mills. Let us read the telegram. What does it say? Shipment to whom? Shipment to Evans-Terry Company. Was the flour shipped to Evans-Terry Company? It was shipped to Liberty Mills. What opportunity did Evans-Terry Company have to count and inspect? Did they have a right under the contract to inspect and count? The supreme court of the United States says so. And it says that the right to inspect carries with it the right to reject. See. *Pope* v. *Allie,* 39 Lawyer's Edition, page 393.

We come now to examine the question of the real intent of the parties. As to this, it seems there was not a meeting of the minds if the testimony of the plaintiff is true. Plaintiff agreed to pay the freight, delivery was to be at point of shipment lugging in the record a lot of incompetent testimony about the meaning of the letters C. A. F.

If there was no. meeting of the minds, there was no contract and no liability on the part of the defendant. Now if the testimony offered by the plaintiff is true, there was no meeting of the minds and no contract. If their testimony is not true, then the testimony of the defendant must be accepted as true and there should have been a judgment for the defendant. The witness Thompson testified the flour was sold delivered at Laurel.

There is not a word or a syllable in the original telegram as to where delivery was to be made. The contract being silent as to place of delivery and there being no presumption of law to be invoked in behalf of the seller or purchaser, and there being five hundred miles between the buyer and seller, this part of the contract could be supplied only by parol testimony and in this situation unquestionably parol testimony is admissible.

See Evidence Sec. 417, Vol. 8, Decennial Digest. In *Davie* v. *Williams W. Bierce,* 38 So. 488, the supreme court of Louisiana held that testimony of a contemporaneous collateral agreement between parties to a written contract

would be admissible to establish facts about which the written agreement was silent.

The supreme court of Mississippi held in the case of *Illinois Central Railroad Co.* v. *Harper,* 35 So. 764, that in a case where a ticket (which constituted a written contract between the holder and company) was silent as to the route, evidence as to declaration of the agent of the company was competent. This contract for flour was silent as to place of delivery. Each side undertook to show by parol where delivery was to be made. The depositions were not excluded, but when the witness Thompson was asked as to delivery, the testimony was excluded in effect and disregarded by the giving of a peremptory instruction for the plaintiff.

In *Davis* v. *Tandy,* the supreme court of Missouri (81 S. W. 457) held that where a written contract is made in one state and is to be performed in another; and the contract is silent as to what law is to govern, parol testimony is competent to supply this omission. Also in Kentucky (72 S. W. 779) it was held that where a written contract is silent as to where services were to be rendered, oral testimony was admissible to show the intent of the parties. The supreme court of Louisiana (26 So. 824) held also that when a contract for cane was silent as to who should make application to carrier for cars, testimony should be heard as to oral agreement covering this item. For many cases in point, see 20 Century Digest Evidence, sections 1874 to 1899. However, I regard the case of *Railroad* v. *Harper, supra,* as conclusive. Certainly and beyond all doubt, there is no presumption as to where delivery was to be made. The place of delivery was material. The question of who was to pay freight would have some bearing on the matter and the question could be submitted to the jury on this and on custom of the trade about which Thompson also undertook to testify.

*Henry Hilbun* and *Stone Deavours,* for appellee.

Counsel for appellant has incorporated in his brief much
of the general law on this subject, a great deal of which is
not applicable to this case.

The class of cases cited by him are those cases where the
main question was not whether title had vested in the
buyer, but whether it so absolutely vested as to take away
the lien of the seller for the unpaid purchase money, or his
right to stop *in transitu.*

Counsel had labored under this confusion. The burden
of his argument is, that since under the contract of ship-
ment the seller would have a lien for the unpaid purchase
money or the right to stop the shipment *in transitu,* that,
therefore, the title did not pass to Evans-Terry Company.
This is error into which he has fallen, even though a splen-
did lawyer, because it is undoubtedly true that title may
vest, even while the seller has such control over the goods
that enables it to arrest their full delivery, in default of
payment, or on the failure of the buyer. This distinction is
splendidly made and correctly and clearly stated by the
able law-writer in volume 24, Ruling Case Law, page 14.

This rule is also admirably stated in the syllabus in the
case of *Winslow* v. *Leonard,* 62 Am. Lec. 354. Counsel, in
his brief, stresses this point, and states that there was no
delivery, and that the title did not pass to Evans-Terry
Company, because as he states: "They could make other
disposition of the car at any time before the bill of lading
came into possession of Evans-Terry Company. After the
car arrived, they could have recalled the draft and made
other disposition of the car. A creditor of Liberty Mills
could have attached the flour as property of Liberty Mills
any time before delivery to Evans-Terry Company of the
bill of lading."

Admitting for the sake of argument that the above state-
ment of counsel is true, yet under the rule of law stated
above, it would not prevent the title from passing to the

vendor for the purchase money at the time the shipment was delivered to the carrier at Nashville, Tenn.

It is true that the written contract of sale in this case is silent as to the place of delivery, and therefore silent as to when the title of the shipment is vested. How, then was the court to determine this question? We submit it is by following the rule announced in 24 Ruling Case Law, on page 15, 24 R. C. L., page 15; *Pleasants* v. *Pendleton*, 18 Am. Dec. 726.

Where a contract of sale is F. O. B. at point of initial shipment, delivery to the carrier is ordinarily deemed a delivery to the buyer so as to pass title to him, and this result is not affected by the fact that at the time of the shipment the buyer was notified thereof by letter. We do not think citation on this point is necessary. We think the court at the trial held correctly, that all of the facts and circumstances in the case showed that this shipment was F. O. B. mills at Nashville, Tennessee. The court having reached this conclusion, then it necessarily followed since the uncontradicted evidence showed that the shipment was delivered to the carrier in good condition at Nashville, Tennessee; that Liberty Mills was entitled to demand the entire purchase price from the vendee, Evans-Terry Company.

Counsel for appellant cites much of the general law on the subject, a great deal of which is wholly inapplicable to this case. Let us now examine some of the authorities relied on by him.

Counsel contends that because this shipment was consigned to the seller, and not to the buyer, that the title as between the seller and the buyer did not pass. He quotes at length from 35 Cyc. He takes the position that the mode of shipment in this case is conclusive as to the seller's intention as to the passing of title. But the law cited by him is certainly not in support of this position.

Counsel relies strongly on, has much to say about, and quotes copiously from, the case of *Kentucky Refining Company* v. *Globe Refining Company*, 104 Ky. 559, 47 S. W. 602, 42 L. R. A. 353. Counsel next quotes extensively from the

note to *Ramsey* v. *Gare Mfg. Co.,* 22 L. R. A. 415.  We will not take up this in detail because it is manifest that the cases cited refer to the general rule on the subject and are, therefore of little assistance.

Counsel cites the case of *D. Rosenbaum's Sons* v. *Davis & Andrews Co.,* 71 So. 388, as being the only Mississippi case in point.  He states, on page 130 of his brief, that: "There is, therefore, no decision in point in any reported case from Mississippi upon this particular phase of the case, except the Rosenbaum case hereinafter referred to."

We will, therefore, proceed to discuss the Rosenbaum case.  This case is wholly unlike the case at bar.  In that case the grain was received rotten, unsound and unmerchantable.  In our case there was nothing whatever wrong with the flour.  There were only a few of the bags containing the flour that were soiled and damaged by the railroad company, in transit.  In that case D. Rosenbaum's Sons accepted the shipment, even though damaged, and then brought suit by an attachment for the damages sustained by them.  In the case at bar, Evans-Terry Company, although there was no damage to the flour itself, and although the carrier offered to make them whole before delivery, refused absolutely to accept the shipment.  Counsel cites as a leading case and as absolutely in point *Greenwood Gro. Co.* v. *Canadian County Mills & Elevator Co.,* 72 S. C. 450, 52 S. E. 191, 110, 2 L. R. A. (N. S.) 79.  It seems to us that this case is excellent authority for appellee.

Counsel then, on page 16 of his brief, quotes at great length Mechem on Sales, sections 774 and 775.  We submit that this, instead of being good authority for appellant, is very strong authority for appellee.  The next case cited by counsel is that of the *Corliss F. Roses,* 44 Law Ed. 929.  By a casual reference to this case it is manifest that there is no similarity between that case and the one here We will, therefore, only pay this case the slight respect of a passing glance.

The next case cited is that of *Bank* v. *Smith*, 34 L. R. A. (New Series) 295. This case is not harmful to appellee. In our case it was conclusively shown that the manner of delivery of this shipment was established by custom and usage between the parties for many years.

Counsel cites *Pope* v. *Allis*, 39 Lawyer's Edition, page 393, in support of his contention, and quotes a part of the opinion of the court in this case. This is authority for the proposition that where a vendor sells goods that are not in existence and undertakes to deliver them, the buyer is not bound to accept without examination. If the goods are not of the quality required by the contract, then he may reject the shipment. This has no application to our case. Here the goods were in existence when the contract was made and were of the quality required by the contract when tendered to appellant.

Assuming for the sake of argument only, because we submit that it is not true in this case, that it was the contract between the parties that the shipment was to be delivered F. O. B. Laurel, Mississippi, did Terry-Evans Company have any right to refuse the shipment under the peculiar circumstances as disclosed by the evidence in this case.

We think not. The offer to purchase the flour was made by Evans-Terry Company. It was accepted by Liberty Mills in good faith. And in good faith Liberty Mills further undertook to comply with the contract. It promptly delivered the flour, of the grade, kind and quantity provided in the contract, to the carrier at Nashville, Tennessee. There is no complaint about this. This car of flour arrived at Laurel, Mississippi, within a reasonable time and was tendered to the vendee.

These parties made a contract. Appellant promptly undertook to live up to its obligation thereunder. It immediately delivered to the carrier the amount, kind and quality of the flour ordered. It was sent F. O. B. the Mills, Nashville, Tennessee, as was the custom in several years' dealings with Evans-Terry Company. In due time the ship-

ment arrived at destination and was offered to appellant. There was slight damage in transit to the bags containing the flour—no damage to the flour itself. The damage was inconsequential. Meanwhile the market price of flour was rapidly declining.

Appellant refused to accept the shipment. The carrier offered to make appellant whole, provided it would accept the shipment. Appellant declined to be made whole and to carry out its contract. The appellees was finally forced to bring suit.

This record abounds with evidence of the good faith of appellee. It likewise abounds with evidence of the arbitrary and unreasonable attitude of appellant. We think the judgment of the lower court should be affirmed.

SMITH, C. J., delivered the opinion of the court.

The appellant, the Evans-Terry Company, is engaged in the wholesale grocery business at Laurel, Miss. The appellee, Liberty Mills, operates a flour mill at Nashville, Tenn., and sells the flour milled therein to the wholesale trade. T. C. Thompson is a broker doing business at Laurel and is the appellee's authorized agent for the sale of its flour to the extent of soliciting orders therefor and forwarding them to the appellee for confirmation. The price quoted by the appellee to its customers for its flour and that at which the flour here in question was sold included the transportation charges thereon to the place to which it was to be shipped. On the 9th day of June, 1917, the appellant placed a verbal order with Thompson for a carload of flour, which, according to the evidence of both Thompson and the appellant's manager, was to be delivered to the appellant at Laurel, Miss. Upon receipt of this order Thompson communicated it to the appellee by a telegram in cipher which when translated reads as follows:

"Answering ship Evans 35 bbls. 24 Vanity, 100 bbls. 24, 25 bbls. 12 Blue Violet 12.70 basis."

The meaning of the word "basis" will appear from a report of the sale mailed by Thompson to the appellee on the

same day that the telegram was sent, which report is as
follows:

"Report of Sale.

"T. C. Thompson, Merchandise Broker.

"Laurel, Miss., June 9, 1917.

"Sold to Evans-Terry Co., Laurel, Miss., for account Liberty Mills, Nashville, Tenn., shipment immediate, 100 bbls. in 24's Blue Violets S. R. flour at 12.70 per bbl.  25 bbls. 12's Blue Violets S. R. flour, basis 24″ cotton 35 bbls. 24's Vanity S. R. flour sacks for Luxury.  Delivered Laurel. Confirming exchange telegrams even date."

On June 11th the appellee confirmed the order by a telegram to Thompson to that effect.  It appears, however, both from Thompson's telegram and from his report of the sale, that another telegram had passed between them which does not appear in the record.  Pursuant to this order the appellee shipped a carload of flour to Laurel consigned to its own order, with direction to notify the appellant, and attached the bill of lading therefor to a draft on the appellant to be delivered to it upon the payment of the draft to the bank to which it was forwarded for collection, upon the surrender of which bill of lading to the carrier and payment of the freight the flour would be delivered by the carrier to the appellant.  The appellee, instead of paying the freight on the flour, deducted that amount from the amount to be paid for the flour by the appellant and made the draft for the difference.  When the flour arrived at Laurel the agent of the delivering carrier permitted the appellant to inspect the flour before it had paid the draft or received the bill of lading.  The flour was found to be in a damaged condition; the only conflict in the evidence relative thereto being as to the extent of the damage.  The appellant on account of the condition of the flour declined to accept it or to pay the draft drawn on it for the price thereof, and it was afterwards sold by the carrier in order to collect its transportation charges.

The flour according to the evidence for the appellee was delivered to the railroad company in good condition, and

the character of the damage thereto was such as to indicate that it was sustained while in transit.  The appellant had been purchasing flour from the appellee through Thompson for several years prior to the transaction here in question; the facts and circumstances of each purchase being practically the same as those surrounding the one here involved, except as to the damage to the flour.  Appellee's manager testified that it did not intend to assume the burden of delivering the flour, but quoted the price thereof as including the freight merely for the purpose of enabling its customers to know what the total cost to them of the flour, including the freight, would be.   He further testified that at the top of its invoices sent to its customers, including the appellant, for flour purchased, there appears a printed memorandum as follows:

"We sell goods less freight, but not delivered.  Our responsibility ceases after delivery to public carrier."

No such memorandum appears on the invoice introduced in evidence, but does appear on a paper designated by a memorandum thereon as "loading order," but there is no evidence that any such memorandum, whether it appeared on the invoice or not, was ever brought to the attention of the appellant.

The appellant having declined to pay the freight, this suit was instituted by the appellee, which resulted in a verdict and judgment in its favor.

The principal assignment of error argued by counsel for the appellant is that the court below should have granted its request for an instruction to the jury directing a verdict in its favor, and one of the reasons assigned for the granting of that instruction is that the flour was to be delivered by the appellee to the appellant at Laurel, and that the appellee was under no obligation to accept the flour until so delivered in good condition.

Assuming that the flour was delivered to the carrier in good condition, whether or not the appellant was under obligation as between it and the appellee to accept the

flour when it arrived at Laurel in a damaged condition depends upon whether or not the carrier in transporting the flour was the agent of the appellant or of the appellee.  If of the former, it should have accepted the flour, if of the latter it was under no obligation to do so.  Whether the carrier was the agent of the appellee or not depends on whether in making the sale the appellee assumed the burden of delivering the flour to the buyer at the point of destination.

Whether a seller who is to ship the goods sold to the buyer assumes the burden of delivery is, ordinarily, unless the contract of sale is in writing, a question of fact for the determination of the jury, but, if a verdict for the shipper on the theory that he had not assumed the burden of delivery would not be warranted by the evidence, the jury should be peremptorily instructed to find for the buyer as in other cases wherein the question of.the granting of such an instruction arises.

Leaving out of view the evidence of the appellant to the effect that the flour was to be delivered to it at Laurel, the consignment of the flour by the appellee to its own order and the drawing of the draft by it on the appellant for the price thereof with the bill of lading attached is *prima-facie* evidence that the delivery was to be made to the appellant ar Laurel.  *Rosenbaum* v. *Davis*, 111 Miss. 2˅3, 71 So. 388.

The evidence relied on to overcome this *prima-facie* case is wholly insufficient for that purpose, being simply to the effect, as hereinbefore pointed out that the appellees did not intend to assume responsibility for the flour after delivering it to the carrier, which intention was not disclosed to the appellant unless by the printed memorandum to that effect at the top of the invoice or "loading order," which memorandum is not shown to have been brought to the appellant's attention.

The peremptory instruction requested by the appellant should have been given.

Reversed, and judgment here for the appellant.

*Reversed.*